PHILIP FILIPPELLI III ET AL. *v.* SAINT
MARY'S HOSPITAL ET AL.
(AC 33557)

Lavine, Espinosa and Borden, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued October 10, 2012—officially released April 2, 2013

*Stephanie Z. Roberge*, for the appellant (named plaintiff).

*Ellen M. Costello*, for the appellees (defendant Waterbury Orthopaedic Associates, P.C., et al.).

*Opinion*

LAVINE, J. In this medical malpractice action, the plaintiff Philip· Filippelli III[1] appeals from the judgment of the trial court, rendered after a jury verdict, in favor of the defendants, Dennis M. Rodin, an orthopedic surgeon, and Waterbury Orthopaedic Associates, P.C.[2] On appeal, the plaintiff claims that the court abused its discretion with regard to its evidentiary rules concerning (1) a certain article from a medical journal (journal article) and (2) the deposition testimony of the defendants' expert witness. We affirm the judgment of the trial court.

The following procedural history and facts, as the jury reasonably could have found them, are relevant to this appeal. The plaintiff, then thirty-eight years old, was playing basketball on March 4, 2005, when he sustained a comminuted tibial plateau fracture.[3] He was taken by ambulance to the emergency department of Saint Mary's Hospital (emergency department) at approximately 10 p.m., treated and released with

---

[1] Philip Filippelli's wife, Linda Filippelli, alleged claims for loss of consortium against the defendants when the action was commenced. She withdrew her claims prior to trial. We therefore refer in this opinion to Philip Filippelli III as the plaintiff.

[2] The plaintiff withdrew his claims against the named defendant, Saint Mary's Hospital, prior to trial. We therefore refer in this opinion to Dennis M. Rodin and Waterbury Orthopaedic Associates, P.C., as the defendants.

[3] A comminuted fracture is one "in which the bone is broken into more than two fragments." T. Stedman, Medical Dictionary (27th Ed. 2000) p. 711. "A tibial plateau fracture occurs at the top of the shin bone, and involves the cartilage surface of the knee joint." J. Cluett, M.D., "Tibial Plateau Fractures: What is a tibial plateau fracture?" available at http://orthopedics.about.com/od/brokenbones/a/tibia_2.htm (last visited March 19, 2013).

instructions to consult an orthopedic surgeon. The plaintiff returned to the emergency department at approximately 7:30 a.m. the next morning, March 5, 2005, complaining of severe pain in his left lower extremity. Brian J. McMahon, a physician, examined the plaintiff and then consulted Rodin. According to the medical record that McMahon created, Rodin "came in quickly, felt that the examination was somewhat equivocal and elected to admit the [plaintiff] for observation."

Following his examination of the plaintiff, Rodin documented his impression of the plaintiff's condition as "[l]eft tibial plateau fracture with question of compartment syndrome."[4] He also wrote: "[t]his may very well be an impending compartment syndrome and we will closely monitor this every two hours for neurovascular check." At 6:45 p.m. that day, Rodin examined the plaintiff again, took compartment pressures and found them to be elevated. Rodin diagnosed the plaintiff with compartment syndrome and immediately performed a four compartment fasciectomy[5] of the plaintiff's lower left extremity.

The plaintiff subsequently commenced this action against the defendants, alleging that Rodin was careless and negligent in his treatment of him by failing timely to diagnose compartment syndrome and perform a fasciectomy, among other things. The plaintiff further alleged that, as a result of Rodin's carelessness and negligence, he has sustained, among other things,

---

[4] Compartment syndrome is "a condition in which increased pressure in a confined anatomical space adversely affects the circulation and threatens the function and viability of the tissues therein." T. Stedman, Medical Dictionary (27th Ed. 2000) p. 1751.

[5] A fasciectomy is the "[e]xcision of strips of fascia." T. Stedman, Medical Dictionary (27th Ed. 2000) p. 652. The fascia is a "sheet of fibrous tissue that envelops the body beneath the skin; it also encloses muscles and groups of muscles, and separates their several layers or groups." Id., p. 647.

postsurgical complications, permanent nerve and muscle damage, and additional surgeries.[6] The defendants denied the alleged negligence. Their theory of defense was that the plaintiff's alleged injuries were a consequence of his tibial plateau fracture and the need for a four compartment fasciectomy. The action was tried to a jury in May, 2011.

At trial, the jury heard testimony as to the standard of care applicable to a board certified orthopedic surgeon when diagnosing compartment syndrome from Rodin, Andrew Bazos, the defendants' expert witness, and Ronald M. Krasnick, the plaintiff's expert witness.[7] Bazos testified that Rodin's diagnosis of the plaintiff's compartment syndrome was timely and did not deviate from the standard of care.[8] Rodin and Bazos testified that an orthopedic surgeon would not subject a patient to a fasciectomy unless it was mandatory due to the high risk of infection and other sequelae, including additional surgery to close the wounds, skin grafting and scarring associated with such surgery.

Krasnick agreed with the identified risks associated with a fasciectomy. He testified, however, that the plaintiff had compartment syndrome on the morning of March 5, 2005, when he returned to the emergency department and that Rodin deviated from the standard of care by failing to diagnose compartment syndrome

---

[6] The plaintiff did not allege that the defendants caused his compartment syndrome.

[7] Rodin, Bazos and Krasnick are board certified orthopedic surgeons. Krasnick and Bazos agreed that a patient either has compartment syndrome or does not. They also agreed that there is no treatment to prevent compartment syndrome from developing and a fasciectomy is the only method of treating compartment syndrome.

[8] The specific issue regarding the standard of care was focused on how an orthopedic surgeon makes a definitive diagnosis of compartment syndrome. Both expert witnesses agreed that a diagnosis of compartment syndrome is made pursuant to a clinical history and physical examination.

at that time.[9] The jury found that Rodin did not breach the standard of care[10] and returned a verdict in the defendants' favor.[11] Additional facts will be addressed as needed.

On appeal, the plaintiff states that the primary issue "in this case was whether the plaintiff had compartment syndrome when he returned to the emergency department at approximately 7:30 a.m. [on March 5, 2005] and required fasciectomy at that time or whether he did not have compartment syndrome until 6:00 p.m. and surgery was therefore timely performed." He claims that the court abused its discretion by precluding him from using an article from a medical journal and deposition testimony to impeach the credibility of Rodin and Bazos. The plaintiff also claims that he is entitled to a new trial because the court's evidentiary rulings were harmful. We disagree.

We begin with the standard of review applicable to claims of evidentiary error. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor

[9] Krasnick testified that compartment syndrome can cause permanent damage to muscles and nerves in six to eight hours. He opined that the plaintiff had compartment syndrome for approximately thirteen hours prior to the time Rodin performed the fasciectomy on the evening of March 5, 2005. Krasnick, Bazos and Rodin all testified that, if the plaintiff had compartment syndrome for thirteen hours, meaning no blood flow to his lower left extremity for that period of time, there would be significant muscle necrosis that would have required amputation of the plaintiff's leg.

[10] Two interrogatories were submitted to the jury. The first interrogatory asked the jury to determine whether it found by a preponderance of the evidence that Rodin deviated from the standard of care appropriate for board certified orthopedic surgeons. The jury answered the question in the negative and did not, as instructed, consider the second interrogatory, which asked whether Rodin's alleged carelessness was the proximate cause of the plaintiff's injury.

[11] The plaintiff did not file a motion to set aside the verdict. See Practice Book § 16-35.

of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . . Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial." (Internal quotation marks omitted.) *Hurley* v. *Heart Physicians, P.C.*, 298 Conn. 371, 401–402, 3 A.3d 892 (2010).

"[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . Moreover, an evidentiary impropriety in a civil case is harmless only if we have a fair assurance that it did not affect the jury's verdict. . . . A determination of harm requires us to evaluate the effect of the evidentiary impropriety in the context of the totality of the evidence adduced at trial." (Citation omitted; internal quotation marks omitted.) *Klein* v. *Norwalk Hospital*, 299 Conn. 241, 254–55, 9 A.3d 364 (2010).

I

The plaintiff's first set of claims centers on the court's evidentiary rulings with regard to the journal article. The plaintiff claims that the court misapplied the learned treatise doctrine by precluding him from using it (1) to impeach Rodin and Bazos and (2) to confirm Krasnick's testimony. The plaintiff claims that his inability to use the journal article prevented him from presenting evidence of the character, credibility and conduct of defense witnesses. Reviewing the plaintiff's claims that the trial court improperly excluded evidence by an abuse of discretion standard; see *Hurley* v. *Heart*

*Physicians, P.C.,* supra, 298 Conn. 401–402; we reject them.

The following facts are relevant to our resolution of the plaintiff's claims. Counsel for the plaintiff deposed Rodin in March, 2009. At that time, Rodin testified that, in preparation for the deposition, he had reviewed an article in the Journal of the American Academy of Orthopaedic Surgeons, but that he had not brought the journal article to the deposition. Later, the plaintiff's counsel undertook a literature search and found an article published in the subject journal that she believed to be the one Rodin reviewed. On May 6, 2011, as trial was about to begin, the plaintiff filed a supplemental list of exhibits that included, among other things, "3. J Am Academy Orthopaedic Surg, Vol 13, No 7, November 2005, Acute Compartment Syndrome and Lower Extremity Musculoskeletal Trauma."

The defendants filed an objection to the plaintiff's supplemental list of exhibits, including the journal article. The defendants claimed prejudice due to the plaintiff's late disclosure of the journal article and sought to preclude its use at trial. The defendants stated in their objection to the supplemental disclosure that, at the time they took Krasnick's deposition, they asked him "if there was any literature upon which he relied to support his opinions or any literature he intended to bring to trial. He indicated that there was none." The defendants cited *Kaplan* v. *Mashkin Freight Lines, Inc.*, 146 Conn. 327, 150 A.2d 602 (1959), in support of their objection.

On May 10, 2011, the court held a hearing regarding the defendants' objection to putting the journal article into evidence at trial. The plaintiff's counsel argued that Rodin had referred to the journal article during his deposition and that she intended to use the journal article to confirm Kransnick's opinion that Rodin's care

and treatment of the plaintiff had deviated from the standard of care. The defendants presented argument consistent with their objection to the plaintiff's supplemental disclosure. They also contended that Rodin had referred in general to a journal article, not to a specific journal article, and that the plaintiff had failed to demonstrate that the article found by the plaintiff's counsel was, in fact, the one Rodin had reviewed. Moreover, Rodin was a fact witness, not an expert witness, and no expert had testified that the journal article was a standard authority in accordance with § 8-3 of the Connecticut Code of Evidence. The court sustained the defendants' objection to the use of the journal article with respect to Krasnick. The court, however, conditionally overruled the defendants' objection with respect to Rodin.[12]

The plaintiff's claims are governed by the learned treatise exception to the hearsay rule, about which there is much confusion in the record and briefs. Connecticut Code of Evidence § 8-3 provides in relevant part: "Hearsay Exceptions: Availability of Declarant Immaterial. The following are not excluded by the hearsay rule, even though the declarant is available as a witness. . . . (8) Statement in learned treatises. To the extent called to the attention of an expert witness on cross-examination or relied on by the expert witness in direct examination, a statement contained in a published treatise, periodical or pamphlet on a subject of . . . medicine . . . recognized as a standard authority in the field by the witness, other expert witness or judicial notice. . . ."

"Under Connecticut law, if a medical treatise is recognized as authoritative by an expert witness and if it

---

[12] On appeal, the defendants argue that the court abused its discretion by admitting the journal article for any purpose because the foundational elements of the exception to the hearsay rule contained in Conn. Code Evid. § 8-3 (8) were not met. In light of our resolution of the plaintiff's claims, we need not reach the defendants' claim.

influenced or tended to confirm his opinion, then relevant portions thereof may be admitted into evidence in the exercise of the trial court's discretion." *Cross* v. *Huttenlocher*, 185 Conn. 390, 395, 440 A.2d 952 (1981). "Upon the direct examination of an expert witness on medical science, extracts from treatises in that science which he states are recognized by his profession as authoritative and which have influenced or tend to confirm his opinion may be used. . . . In the cross-examination of the expert witness, such extracts may be used by incorporating them in questions to him to test his qualifications and to impeach his testimony." (Citations omitted.) *Kaplan* v. *Mashkin Freight Lines, Inc.*, supra, 146 Conn. 331.

Part of the confusion in this case centers on the distinction between a periodical and an article published in that periodical. The issue was addressed by this court in *Musorofiti* v. *Vlcek*, 65 Conn. App. 365, 783 A.2d 36, cert. denied, 258 Conn. 938, 786 A.2d 426 (2001), which decided the issue pursuant to federal case law. In *Musorofiti*, the plaintiffs argued that the expert's "acceptance of the journal that contained the article was insufficient to qualify the article contained therein as a learned treatise." Id., 384. The United States Court of Appeals for the First Circuit has stated that it "would not accept plaintiff's argument that the contents of all issues of a periodical may be qualified wholesale under [Federal Rule of Evidence] 803 (18) by testimony that the magazine was highly regarded. In these days of quantified research, and pressure to publish, an article does not reach the dignity of a reliable authority merely because some editor, even a most reputable one, sees fit to circulate it." (Internal quotation marks omitted.) Id., quoting *Meschino* v. *North American Drager, Inc.*, 841 F.2d 429, 434 (1st Cir. 1988).

This court stated that it "too, would not accept that *all* articles in a periodical may be qualified as learned

through the mere demonstration that the periodical itself is highly regarded." (Emphasis in original.) *Musorofiti* v. *Vlcek*, supra, 65 Conn. App. 384. This court, however, looked to another federal circuit court of appeals to explain the parameters of the rule. The United States Court of Appeals for the Second Circuit has stated that it did not "read *Meschino* to say that the reputation of the periodical containing the proffered article is irrelevant to the authoritativeness inquiry. Publication practices vary widely, and an article's publication by an esteemed periodical which subjects its contents to close scrutiny and peer review, obviously reflects well on the authority of the article itself. Indeed, because the authoritativeness inquiry is governed by a liberal standard, good sense would seem to compel recognizing some periodicals—provided there is a basis for doing so—as sufficiently esteemed to justify a presumption in favor of admitting the articles accepted for publication therein." (Internal quotation marks omitted.) Id., 384–85, quoting *Costanino* v. *Herzog*, 203 F.3d 164, 172 (2d Cir. 2000). This court, therefore, concluded that it is "not an abuse of the trial court's discretion to determine that because [the expert] viewed the journal as authoritative, it made good sense to justify a presumption in favor of admitting the [article] accepted for publication therein." (Internal quotation marks omitted.) *Musorofiti* v. *Vlcek*, supra, 385.

A

The plaintiff claims that the court abused its discretion by precluding him from using the journal article to confirm Krasnick's expert opinion. We disagree.

The plaintiff filed a supplemental list of exhibits on the eve of trial. The court found that the plaintiff's late disclosure surprised the defendants with his intended use of the journal article with respect to Krasnick. The

court therefore precluded the plaintiff from using the article to confirm Krasnick's expert testimony.

On appeal, the plaintiff does not challenge the basis of the court's timeliness ruling but argues that, because the Journal of the American Academy of Orthopaedic Surgeons is a standard authority in the field of orthopedic surgery,[13] he should have been permitted to use the journal article to confirm Krasnick's expert opinion. Krasnick, however, did not testify that the journal article was a standard authority on the care and treatment of compartment syndrome. Rather, Krasnick testified that he did not recognize any textbook or article as authoritative on the subject. In formulating his opinion with respect to the standard of care at issue in this case, Krasnick testified that he relied on the sum total of orthopedic literature, none of which is authoritative. The plaintiff has not directed us to any evidence that any expert in this case relied on the journal article or identified it as a standard authority. The court found that the journal article was hearsay. Pursuant to § 8-3 (8) of our code of evidence, if no expert witness has identified an article as a standard authority or relied on it in formulating his or her opinion, it is not admissible evidence. See *Kaplan* v. *Mashkin Freight Lines, Inc.*, supra, 146 Conn. 331.

We conclude that the court did not abuse its discretion by precluding the plaintiff from using the journal article to confirm Krasnick's opinion. The plaintiff's disclosure of the journal article not only was untimely, but also Krasnick testified that he did not rely on any medical literature he considered authoritative to form

---

[13] At trial, Krasnick testified that the Journal of the American Academy of Orthopaedic Surgeons is a reference tool and a standard authority in the field of orthopedic surgery. Bazos, however, testified to the contrary. See part I C of this opinion. This appeal does not require us to resolve the difference of opinion.

his opinion. The plaintiff may not use an article to confirm his expert's testimony if the expert did not rely on the article. See *Farrell* v. *Bass*, 90 Conn. App. 804, 815–19, 879 A.2d 516 (2005) (failure to disclose article prejudicial; expert's opinion not based on specific literature).

## B

The plaintiff also claims that the court abused its discretion by limiting his use of the journal article to impeach Rodin's credibility, thereby abridging his ability to cross-examine him. The essence of the plaintiff's claim is that Rodin was not truthful when he testified that his deposition testimony was consistent with the journal article that he had reviewed in preparation for his deposition.[14] In the opinion of the plaintiff's counsel, Rodin's deposition testimony regarding the diagnosis of compartment syndrome was not consistent with the journal article, and she was entitled to bring these facts regarding Rodin's lack of candor to the attention of the jury. We do not agree.

[14] During his deposition, Rodin testified, in part, in response to questioning by the plaintiff's counsel as follows:

"Q. Did you review any literature in preparation for your deposition today?

"A. I did look at one review article.

"Q. What did you look at?

"A. Journal of American Academy of Orthopaedic Surgery.

"Q. What article did you review?

"A. An article on compartment syndrome.

"Q. When was that article published?

"A. I believe 2005; I'm not sure exactly.

"Q. What did the article say?

"A. Just a review about what compartment syndrome is, and diagnosis and treatment.

"Q. What did it list in there about diagnosis and treatment?

"A. Similar to things I've already mentioned in terms of specific things to look at on clinical examination.

"Q. Why did you review that in connection with your deposition today?

"A. Just to prepare, not knowing what I would be asked.

"Q. Did you refer to any journals or medical literature during your treatment of [the plaintiff's] compartment syndrome?

"A. No."

The following facts and rather detailed procedural history are relevant to understanding the plaintiff's claim. When the plaintiff deposed him, Rodin testified that he had reviewed the journal article in preparation for the deposition because he did not know what questions he would be asked. Rodin did not bring the journal article to the deposition. Plaintiff's counsel, however, found an article in the November, 2005, Journal of the American Academy of Orthopaedic Surgeons that she believed was the article Rodin had reviewed. It is the opinion of the plaintiff's counsel that the journal article contradicts Rodin's medical testimony because Rodin testified that the standard of care does not require the taking of compartment pressures, and the article states that "whenever a diagnosis is uncertain in a patient at risk you use a compartment pressure."

The defendants filed a motion in limine to preclude the plaintiff from using the journal article at trial because Rodin was a fact witness, not an expert witness. During the hearing on the defendants' motion to preclude, the plaintiff's counsel stated that she intended to use the journal article, not for the truth of the matter, but to impeach Rodin's credibility. The plaintiff also argued that because Rodin was a fact witness, not an expert, the learned treatise doctrine did not apply. The court denied the defendants' motion to preclude the plaintiff's use of the journal article to impeach Rodin's testimony.

During the plaintiff's direct examination of him at trial, Rodin testified that he did not recall reading a journal article before his deposition. In the presence of the jury, Rodin acknowledged that, during his deposition, he testified that he had reviewed a journal article. Plaintiff's counsel presented Rodin with a copy of the journal article that she had located and asked him if it was the article he had reviewed. Rodin did not recognize

the journal article nor did he remember reading it. Plaintiff's counsel then presented Rodin with copies of what she represented were the tables of contents of the Journal of the American Academy of Orthopaedic Surgeons for 2005. The table of contents disclosed only one article concerning compartment syndrome, which was published in November, 2005.

Following the plaintiff's offer of proof with respect to the tables of contents, the court found that the journal article discovered by the plaintiff's counsel published in the Journal of the American Academy of Orthopaedic Surgeons in November, 2005, entitled "Acute Compartment Syndrome in Lower Extremity Musculoskeletal Trauma," was the article reviewed by Rodin prior to his deposition. The court admitted into evidence a copy of the journal article because Rodin testified that "he relied on this journal article in preparation for his deposition . . . ."[15]

Prior to the next trial day, the defendants submitted a memorandum of law in opposition to the admission of the journal article through a nonexpert witness to impeach the credibility of that witness. Rodin had not been disclosed as an expert witness. The defendants argued that the journal article was hearsay and the learned treatise exception to the hearsay rule did not apply because the article had not been identified as authoritative nor was it relied on by an expert witness. The defendants further argued that the plaintiff intended to use the journal article for substantive purposes. Counsel for the plaintiff countered with an argument that Rodin's deposition testimony was untruthful as it was at odds with the substance of the journal article, although Rodin had testified that his testimony was consistent with the journal article.

---

[15] In this opinion, we do not address the propriety of the court's finding.

Following the arguments of counsel, the court vacated its order from the previous day of trial admitting the journal article into evidence. The court, on reconsideration, found that the journal article was hearsay. The court stated that the journal article was a learned treatise, but no expert witness had identified it as being a standard authority and the fact that the journal article is dated eight months after Rodin rendered care and treatment to the plaintiff weighed against its admission into evidence.[16]

Text from a published work on medicine "may be admitted into evidence under the learned treatise exception to the hearsay rule if two foundational requirements are satisfied. . . . First, the work must be recognized as a standard authority in the field by the witness, other expert witness or judicial notice, and, second, the work must either be brought to the attention of the witness on cross-examination or have been relied on by that expert during direct examination." (Citation omitted; internal quotation marks omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 367, 788 A.2d 496 (2002). "Connecticut permits the introduction of professional and scientific treatises and journals on cross-examination of an expert witness to impeach the expert's testimony if the expert has either relied on the work in direct examination or acknowledged the work as accepted by the profession. Conn. Code. Evid. § 8-3 (8)." (Internal quotation marks omitted.) *Harlan* v. *Norwalk Anesthesiology, P.C.*, 75 Conn. App. 600, 605, 816 A.2d 719, cert. denied, 264 Conn. 911, 826 A.2d 1155 (2003).

Section 8-3 (8), however, is not a rule "that mandates the admission of a learned treatise for substantive purposes." Id., 607. "The heading of § 8-3 is Hearsay Exceptions: Availability of Declarant Immaterial. Its opening

---

[16] The court, however, granted the request of the plaintiff's counsel to make an offer of proof.

words are: The following are *not excluded* by the hearsay rule, even though the declarant is available as a witness . . . . Section 8-3 (8), therefore, did not require the court to admit the learned treatise into evidence for all purposes. Section 8-3 (8) does not purport to circumscribe the discretion generally afforded to a trial court to determine the admissibility of evidence in light of the facts of record." (Emphasis in original; internal quotation marks omitted.) Id. The trial court has discretion to limit the admissibility of a learned treatise when used to undermine or bolster credibility dependent on the facts of a particular case. See id. Trial courts must exercise judicious discretion in deciding what ought to be admitted as a full exhibit. See *Cross* v. *Huttenlocher*, supra, 185 Conn. 396–97.

On the basis of our review of the procedural history and the law, we conclude that the court did not abuse its discretion when it vacated its prior order to admit the journal article as evidence for the purpose of impeaching Rodin, who had not been disclosed as an expert witness, and no expert in this case had identified the article as standard authority nor had any expert relied on it in forming his opinion. See *Farrell* v. *Bass*, supra, 90 Conn. App. 819–20.

Furthermore, although the plaintiff claims that the court's ruling precluded him from presenting evidence regarding Rodin's credibility, he, in fact, was able to attack Rodin's credibility with respect to the journal article. He brought to the jury's attention Rodin's deposition testimony that he had reviewed an article prior to his deposition and that at trial Rodin could not remember having read the article. The issue before the jury was whether Rodin's care and treatment of the plaintiff deviated from the standard of care expected of a board certified orthopedic surgeon. To make that determination, the jury had before it testimony from Rodin and two expert witnesses. Even if we were to

conclude that the court improperly had precluded the plaintiff from questioning Rodin about the journal article, we would not find that the ruling was harmful.

## C

The plaintiff also claims that the court improperly limited his use of the journal article during his examination of the defendants' expert witness, Bazos. We disagree.

At trial, Bazos testified that he had never read the journal article. During cross-examination, the plaintiff's counsel asked Bazos if the Journal of the American Academy of Orthopaedic Surgeons is a standard reference for orthopedic surgeons. Bazos testified that the Journal of the American Academy of Orthopaedic Surgeons is a "throwaway" journal that contains many advertisements for medical devices and is not peer-reviewed. Bazos further testified that the peer-reviewed journal of the American Academy of Orthopaedic Surgeons is the Journal of Bone and Joint Surgery.[17]

Although the court previously had ruled that the journal article was inadmissible hearsay, the court admitted it into evidence because Bazos recognized the Journal of Bone and Joint Surgery as a standard authority, and the subject journal article is a review article of papers published in the Journal of Bone and Joint Surgery. The court, however, sustained some of the defendants' objections to the plaintiff's use of the journal article during his cross-examination of Bazos. The court also did not permit the plaintiff's counsel to read sections of the journal article to Bazos or to have Bazos read sections of the journal article to the jury. Plaintiff's counsel, however, was permitted to refer to the journal

---

[17] Krasnick testified that the subject journal article is what is called a review article in that it is not based on original research by the authors, but is a compilation by the authors of the published research conducted by others.

article as she questioned Bazos. Prior to submitting the journal article to the jury, the court ordered that portions of the journal article not addressed during the plaintiff's cross-examination of Bazos be redacted.[18]

We conclude that the court did not abuse its discretion by limiting the plaintiff's use of the journal article to cross-examine Bazos. The plaintiff failed to meet the foundational elements of § 8-3 of the Connecticut Code of Evidence regarding exceptions to the hearsay rule. See *Kaplan* v. *Mashkin Freight Lines, Inc.*, supra, 146 Conn. 331 (extracts from medical treatise should not have been read to jury during cross-examination of expert witness where they were never admitted as full exhibit); see also *Cousins* v. *Nelson*, 87 Conn. App. 611, 621–22, 866 A.2d 620 (2005) (court properly precluded cross-examination of expert who did not rely on article during direct examination nor recognize it as authoritative). Both Krasnick and Bazos testified that there is no standard authority regarding the diagnosis of compartment syndrome and that their knowledge of the care and treatment of such a condition is based on their reading of the whole of orthopedic literature and their education, training and experience as orthopedic surgeons.

## II

The plaintiff's second set of claims focuses on his efforts to impeach the credibility of the defendants'

---

[18] The plaintiff also claims that the court improperly permitted a redacted version of the article to go to the jury, i.e., only those portions of the journal article about which Bazos was questioned. "The question of the cross-examiner must be confined to such parts of the authority as tend to contradict the opinion expressed by the witness. It cannot be based upon some illustration or isolated case used by the authority to explain or illustrate his opinion." *State* v. *Wade*, 96 Conn. 238, 251, 113 A. 458 (1921), superseded by statute on other grounds; see also *Harlan* v. *Norwalk Anesthesiology, P.C.*, supra, 75 Conn. App. 605–607. A trial court is to exercise its discretion in deciding whether a treatise should be sent to the jury to avoid the risk that the jury might misapply or misunderstand it. See *Cross* v. *Huttenlocher*, supra, 185 Conn. 395–97. In light of Bazos' testimony, we conclude that the court properly limited the portions of the journal article submitted to the jury.

expert witness. The plaintiff claims that the court improperly failed to permit him (1) to impeach Bazos with evidence that he had testified as an expert in other unrelated medical malpractice actions on behalf of Rodin, (2) to make an offer of proof regarding said prior testimony and (3) to mark for identification a document regarding said prior testimony. We disagree that the court abused its discretion with regard to any evidence that Bazos may have provided as expert testimony on behalf of Rodin in other medical malpractice actions. Such evidence is more prejudicial than probative. See Conn. Code Evid. § 4-3. We agree, however, that it was improper for the court to refuse to let the plaintiff's counsel make an offer of proof and to mark a document for identification, but we conclude that the errors were harmless.

The relevant procedural history may be summarized as follows. Bazos was deposed by the plaintiff's counsel on April 4, 2011, approximately one month prior to the start of trial. He testified, in part, that he had been disclosed as an expert witness in three or four unrelated medical malpractice actions, but that he could recall the name of only one of those cases, an action that did not involve Rodin. Bazos also testified that he did not know Rodin. When the plaintiff's counsel asked Bazos if he had heard of Rodin previously, Bazos testified that he may have seen Rodin's name on medical records that came across his desk in the course of his medical practice, as Rodin practices in a community near to the one in which Bazos practices.[19]

---

[19] Counsel for the plaintiff questioned Bazos during the deposition, in part, as follows:

"Q. How many medical malpractice cases would you say you've given testimony in?

"A. Maybe three or four.

"Q. Over what period of time?

"A. Probably the past six years.

"Q. Do you know the names of any of the parties that you have given deposition testimony on behalf of? In other words, I take it you were disclosed as an expert on behalf of a physician, correct?

On May 6, 2011, the court held a hearing on numerous motions in limine filed by the parties. One of the defendants' motions in limine sought to preclude the plaintiff from presenting evidence of other medical malpractice actions in which Rodin was a defendant, arguing that such evidence is irrelevant to the question of whether Rodin had breached the standard of care in his care and treatment of the plaintiff and was more prejudicial than probative. The defendants' motion in limine cited the relevancy section of our code of evidence. See Conn. Code Evid. § 4-1 et seq.

In opposing the defendants' motion in limine, the plaintiff's counsel stated that she did not intend to question Rodin about prior or pending medical malpractice actions against him, but that she planned to question Bazos about the number of times he had given expert testimony on Rodin's behalf. She also stated that Bazos had been deposed in another action involving Rodin

---

"A. Yes.

"Q. Do you remember the names of any of the physicians for which you have given deposition testimony as a disclosed expert on their behalf?

"A. The only one I remember, because it was relatively recent, was Dr. Geiger.

\* \* \*

"Q. The other two, maybe three cases in which you have given deposition testimony as an expert; who have you worked with on those cases? What firm; do you know?

"A. I believe with [counsel for the defendants] . . . .

\* \* \*

"Q. Do you know Dr. Rodin?

"A. No.

\* \* \*

"Q. Had you ever heard of Dr. Rodin *before being involved in this case*? You said you hadn't worked with him before.

"A. I've seen his name; I've not worked with him, but Waterbury is not that far away, and we'll occasionally see patients that live there and may have been treated out there in the past." (Emphasis added.)

On appeal, the defendants emphasize the language in the question asking Bazos if he had heard of Rodin "before being involved in this case." There is no evidence in the record as to when Bazos first agreed to serve as an expert witness on Rodin's behalf.

approximately one month prior to his being deposed in this case, but Bazos was unable to recall that fact when the plaintiff deposed him. According to the plaintiff's counsel, Bazos' deposition testimony in this case was untruthful. See footnote 19 of this opinion. The plaintiff intended to use the deposition transcript to impeach Bazos' credibility and to demonstrate his bias.

Counsel for the defendants argued that, when testifying at the subject deposition, Bazos had misunderstood the question from the plaintiff's counsel, believing that she was asking him about testimony given at trial, not at a deposition. Counsel for the defendants stated that Bazos was truthful in that he had never met Rodin and that his relationship is with her and her firm, not Rodin. Moreover, Bazos intended to use an errata sheet to amend his deposition testimony in this case to indicate the number of times he had given testimony on behalf of Rodin.[20] Counsel for the defendants argued that evidence of the number of times Bazos served as an expert witness for Rodin was a backdoor way of getting the number of malpractice actions against Rodin before the jury, regardless of the merits of those actions.

The court agreed that evidence regarding other medical malpractice claims against Rodin was more prejudicial than probative, but stated that the plaintiff was entitled to inquire whether Bazos was "looking at . . . Rodin for the first time." The court therefore granted the defendants' motion in limine in part, but denied it in part to permit the plaintiff's counsel to inquire of

[20] See subsection (d) of Practice Book § 13-30, titled "Deposition Procedure." Bazos timely signed and submitted a deposition errata sheet, which stated in part: "I have never met Dr. Rodin, but [counsel for the defendants] retained me as an expert witness in two other cases for Dr. Rodin." The plaintiff did not seek permission to open the deposition of Bazos to inquire about his testimony in those other actions.

In the defendants' brief on appeal, Rodin has represented that Bazos was retained in two additional cases *after he was retained as an expert witness in this case.* See emphasis in footnote 19 of this opinion.

Bazos as to any prior working relationship he had with Rodin.

At trial, prior to cross-examining Bazos, the plaintiff's counsel requested a sidebar conference. Thereafter, the court excused the jury and asked Bazos to step outside the courtroom. Plaintiff's counsel stated her desire to question Bazos about other deposition testimony he had given on behalf of Rodin. She stated that, during his deposition in this case, Bazos testified that he did not know Rodin but that he may have seen his name in medical records. Moreover, Bazos could recall the name of only one case in which he had testified as an expert. Plaintiff's counsel stated that Bazos gave a deposition on Rodin's behalf in the case of *George* v. *Rodin*, Superior Court, judicial district of Waterbury, Docket No. CV-09-5014966-S, approximately two months prior to the day he was deposed in this action. Five days prior to the deposition in this case, Bazos signed the deposition errata sheet in *George* v. *Rodin*, but testified that he could not recall the names of any other cases in which he had testified. Plaintiff's counsel argued that Bazos' deposition testimony, therefore, was not truthful.

The court pointed out that, if it were to permit the plaintiff to question Bazos about *George* v. *Rodin* in front of the jury and Bazos admitted that he is an expert in that case, evidence of another medical malpractice claim against Rodin would be before the jury. Plaintiff's counsel argued that Bazos denied, under oath, knowing the names of the cases in which he had been disclosed as an expert witness and that such evidence was necessary for the jury to determine Bazos' credibility, which went to the heart of his veracity and whether he was truthful.

The court denied the plaintiff's request to make an offer of proof,[21] ruling that the plaintiff could ask Bazos

[21] The record is not clear what the offer of proof would have entailed as we have no record of the sidebar conversation. The court, however, permit-

whether he had a working relationship with Rodin and that he could challenge Bazos' credibility, but not with evidence of other medical malpractice claims against Rodin, as its prejudicial value far outweighs its probative value.[22]

ted the plaintiff's counsel to make a record of the documents she wanted to use to impeach Bazos, which follows:

"[Plaintiff's Counsel]: [C]an I just put on the record what . . . were the deposition transcripts and the certifications . . . that I was going to bring to the witness' attention?

"The Court: Yes.

"[Plaintiff's Counsel]: There is an errata sheet signed on the 29th of March, 2011, and it was in the matter of *George* v. *Rodin.* There was a deposition transcript that is in the matter of *George* v. *Rodin,* dated January 31, 2011. There is a deposition transcript in [unintelligible] v. *Guiger* . . . .

"The Court: A deposition, was . . . Rodin involved in that action?

"[Counsel for the Defendants]: No.

"[Plaintiff's Counsel]: No, but he was asked about his knowledge of other cases. And that one is July 13, 2010.

"The Court: And you're certainly free to inquire as to the other cases, counsel, not as to previous malpractice or pending malpractice cases against . . . Rodin."

[22] On cross-examination at trial, counsel for the plaintiff questioned Bazos, in part, as follows.

"Q. And it's true, doctor, isn't it, that you've had an ongoing working relationship with . . . Rodin since about 2008; isn't that right?

"A. Yes.

"Q. And, in fact you've been working with him on several independent matters since that time, correct?

"A. No, I've not worked with him, I've worked with—indirectly with him through another person.

"Q. So you have not had a working relationship with him . . . since 2008?

"A. I have. It depends how you define working relationship.

\* \* \*

"Q. Now, do you remember being asked at your deposition, which was taken just about a month ago on April 4, 2011, as to whether you've ever heard of . . . Rodin?

"A. I'd have to see the—how you asked it. I think you asked me if I knew him.

"Q. Okay. Did you recall testifying that you had not worked with him?

"A. I'd have to see it. I don't have an independent recall, no.

"Q. You don't have an independent recall?

"A. No.

"Q. Well, let me ask you, doctor . . . .

[Counsel for the plaintiff requests exhibit 23 for identification.]

At the end of the court day, after Bazos had completed his testimony and the jury had been excused, the plaintiff sought to mark a document for identification. The court declined the plaintiff's request, but permitted counsel to make an oral record. Plaintiff's counsel identified the document as "the witness certification for [a] deposition that was taken on January 21, 2011. The certification was witnessed on March 29, 2011, by . . . Bazos in the matter of *Steven George* v. *Dennis Rodin, M.D.*"

### A

On appeal, the plaintiff argues that Bazos' allegedly inconsistent deposition testimony was relevant to impeach his general credibility. The plaintiff claims that Bazos was lying when he testified that he could not recall having seen Rodin's name anywhere other than in medical records in the course of his medical practice.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material

"Q. I'm going to direct your attention to page 142, line 20.

"A. I have it.

"Q. The question was, had you ever heard of . . . Rodin before being involved in this case? You said, you hadn't worked with him before. And what was your answer?

"A. I'm reading from my deposition. I've seen his name. I've not worked with him, but Waterbury is not that far away and will occasionally see patients that live there and may have been treated out there in the past.

"Q. So this deposition that you gave was on April 4, 2011, just a little over a month ago, correct, doctor?

"A. That's correct, yes.

"Q. And you had seen his name before that deposition, correct?

"A. That's what I said, I said—I just read—I'll read it again. I said, I've seen his name.

"Q. Right. You had a working relationship that dated back to 2008 and this deposition was given on April 4, 2011; isn't that right?

"A. I met . . . Rodin yesterday for the first time in my life.

"Q. So your testimony [is] you did not have a working relationship with him or that you did?

"A. I just said earlier that I did have a working relationship. I met him yesterday for the first time."

to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1. "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Conn. Code Evid. § 4-3.

"[R]elevant evidence which assumptively is admissible will be rejected by the trial judge if he [or she] determines that the probative value of the evidence is outweighed by considerations of prejudice, confusion of the issues, misleading the jury, undue consumption of time, or possibly, unfair surprise. . . . The decision whether the probative value of the evidence outweighs one or more of the counterweights is made by the trial judge, usually after objection by counsel." (Internal quotation marks omitted.) *Farrell* v. *St. Vincent's Hospital*, 203 Conn. 554, 563, 525 A.2d 954 (1987). "Evidence that may be prejudicial is that which may unduly arouse the jury's emotions of prejudice, hostility or sympathy." *State* v. *Wilson*, 180 Conn. 481, 490, 429 A.2d 931 (1980). "Evidence is prejudicial when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." (Internal quotation marks omitted.) *State* v. *Graham*, 200 Conn. 9, 12, 509 A.2d 493 (1986).

In his brief on appeal, the plaintiff repeatedly cites *Hayes* v. *Manchester Memorial Hospital*, 38 Conn. App. 471, 661 A.2d 123, cert. denied, 235 Conn. 922, 666 A.2d 1185 (1995), another medical malpractice case involving orthopedic surgeons and a question of credibility. We do not dispute the legal principles cited in *Hayes* regarding relevant evidence and a party's right to cross-examine a witness to provide a jury with the evidence necessary to make credibility determinations where the subject

matter is beyond "the ordinary knowledge and experience of judges or jurors." (Internal quotation marks omitted.) *LePage* v. *Horne*, 262 Conn. 116, 125, 809 A.2d 505 (2002). In this case, the subject on which the plaintiff sought to impeach Bazos' testimony, although relevant to his general credibility, was not central to his case.

One of the two primary issues in any medical malpractice action is whether the defendant health care provider breached the duty of care owed to the plaintiff patient. See *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 562–63, 567, 864 A.2d 1 (2005). Evidence regarding a medical expert witness' credibility with respect to the standard of care is a central issue in such cases. Although the case before us and *Hayes* raise evidentiary issues concerning credibility, the centrality of the credibility at issue in each of the cases is different and may be considered in determining whether the evidence, while relevant, was more prejudicial than probative.

In *Hayes*, the plaintiff, Helen Hayes, commenced an action against the defendants, Manchester Memorial Hospital and Wells Jacobson, an orthopedic surgeon, alleging that he improperly read and interpreted X rays of her hip. *Hayes* v. *Manchester Memorial Hospital*, supra, 38 Conn. App. 472. Jacobson disclosed Alan Goodman, another orthopedic surgeon, as his expert witness. At trial, Goodman testified that Jacobson did not breach the standard of care. Id. Counsel for Hayes sought to impeach Goodman's credibility by cross-examining him about a malpractice action in which he was a defendant, alleging negligence with regard to his reading and interpreting X rays that were similar to the allegations against Jacobson. Id., 472–73. Hayes argued that "it was . . . in Goodman's best interest to give the opinion that he did and that it would have been contrary to his interest to testify that there had been a

deviation [by Jacobson] in this case." Id., 473. The trial court in *Hayes* ruled that evidence of the malpractice action against Goodman was more prejudicial than probative. Id., 474–75. This court disagreed, stating that Hayes was deprived of her right to have the jury weigh Goodman's motive for testifying as he did. Id., 475.

The credibility issue in *Hayes* is different from the one raised by the plaintiff in the present case. In *Hayes*, the issue was whether Goodman's testimony regarding the standard of care was credible given the fact that a similar claim had been alleged against him in another malpractice action. Here, the credibility issue centers on Bazos' ability to remember the names of physicians on whose behalf he had been disclosed as an expert witness. That credibility issue does not go to the standard of care regarding the diagnosis of compartment syndrome, which is the central issue in the present case. Moreover, the plaintiff does not claim that a similar medical malpractice action has ever been brought against Bazos.

We conclude that the court properly determined that evidence of other medical malpractice actions in which Bazos testified was not admissible as it was more prejudicial than probative.[23] The principal issue for the jury to determine was whether Bazos' testimony regarding the standard of care was credible, not whether he could remember other medical malpractice actions in which he had given testimony, although such testimony might have shown evidence of bias.[24] The court's ruling on

[23] The plaintiff does not claim that the substance of Bazos' testimony in the other medical malpractice actions was similar to the negligent medical care and treatment alleged in this case or that a similar action had been brought against him.

[24] The record discloses that the plaintiff was able to present the jury with evidence that might indicate bias on the part of Bazos. Plaintiff's counsel questioned him about the number of independent medical examinations he performs, primarily at the request of defendants. Bazos also testified that 5 to 10 percent of his income is derived from medical-legal work and that he charges a fee of $1000 per hour for testimony.

the defendants' motion to preclude evidence of other medical malpractice actions against Rodin permitted the plaintiff to question Bazos about his prior personal relationship with Rodin. That ruling is consistent with *Cousins* v. *Nelson*, supra, 87 Conn. App. 622–24. The court permitted the plaintiff to question Bazos for bias so long as the plaintiff did not disclose to the jury evidence of other medical malpractice actions against Rodin. For these reasons, the plaintiff's claim fails.

B

The plaintiff also claims that it was improper for the court to refuse to let him make an offer of proof regarding Bazos' having served as an expert for Rodin in other medical malpractice actions. Although a trial court is required to permit parties to create an adequate record for review, including offers of proof, in this case, the record is adequate for our review of the issue. The court's error, therefore, was harmless.

"[A] proper offer of proof serves to inform the court of the legal theory under which the offered evidence is admissible . . . [and] of the specific nature of the offered evidence so the court can judge its admissibility, thereby creating an adequate record for appellate review." (Internal quotation marks omitted.) *Burns* v. *Hanson*, 249 Conn. 809, 824, 734 A.2d 964 (1999). A court may not prevent a party from creating an adequate record for review by means of an offer of proof. See *State* v. *Zoravali*, 34 Conn. App. 428, 433, 641 A.2d 796, cert. denied, 230 Conn. 906, 644 A.2d 921 (1994). An offer of proof, however, is not necessarily required "to preserve a claim of infringement on the right of cross-examination." *State* v. *Santiago*, 224 Conn. 325, 331 n.6, 618 A.2d 32 (1992); see *State* v. *Brown*, 273 Conn. 330, 341, 869 A.2d 1224 (2005) (record independently establishes relevance of proffered evidence); *Burns* v. *Hanson*, supra, 824–25 (failure to permit offer of proof not

reversible error where record is adequate for review); *State* v. *Santiago*, supra, 330 n.6 (objection made clear effort to elicit evidence of bias); *State* v. *Zoravali*, supra, 433 (failure to permit offer of proof harmless error).

Here, although the court improperly failed to permit the plaintiff's counsel to make an offer of proof, the court permitted the plaintiff's counsel to argue extensively, on more than one occasion, the legal basis on which she wanted to present evidence of other medical malpractice actions in which Bazos testified as an expert witness, particularly on behalf of Rodin. Our review of the transcript discloses a record adequate for review of the plaintiff's claim on appeal.

A trial court is granted deference to manage trial proceedings, as it is in a better position to determine the effect a particular procedure will have on all parties. See *Friends of Animals, Inc.* v. *United Illuminating Co.*, 124 Conn. App. 823, 836 n.10, 6 A.3d 1180 (2010), citing *Krevis* v. *Bridgeport*, 262 Conn. 813, 819, 817 A.2d 628 (2003); see also *West Haven Lumber Co.* v. *Sentry Construction Corp.*, 117 Conn. App. 465, 469, 979 A.2d 591 (control of courtroom proceedings particular province of trial court), cert. denied, 294 Conn. 919, 984 A.2d 70 (2009).

Given the number of times the plaintiff's counsel argued to the court that Bazos had been untruthful during his deposition when he could not recall the names of cases in which he testified as an expert, the court was fully aware, as are we, of the legal theory counsel was advocating. The record is adequate for our review, and there is no harm to the plaintiff.

C

The plaintiff also claims that it was improper for the court not to permit him to mark for identification the

certification page of a certain deposition. We agree, but conclude that the error was harmless.

This claim is controlled by our Supreme Court's decision in *State* v. *Silva*, 201 Conn. 244, 513 A.2d 1202 (1986). In *Silva*, the trial court refused to mark for identification a document that was the subject of a subpoena duces tecum. Id., 253. The court previously had granted a motion to quash the subpoena duces tecum because the document sought was protected by the attorney-client privilege. Id. Although that trial court recognized that any item offered by counsel must be marked as an exhibit for identification, "it reasoned that if it [had] quashed the subpoena there would be nothing for counsel to offer." Id.

Our Supreme Court agreed that if the court properly granted the motion to quash that there would be no need to mark the document as an exhibit for identification. Id. The situation would be different, however, if the court improperly had granted the motion to quash and not marked the document as an exhibit for identification. Id. In that circumstance, an appellate court is "precluded from considering the probable effect of the evidence had it been admitted at trial." Id. Our Supreme Court reaffirmed—and we echo—the general rule that a trial court "*must* mark as an exhibit for identification *anything* offered by counsel." (Emphasis in original.) Id. The court, however, concluded in *Silva* that the motion to quash properly had been granted. Id., 257. The court's failure to mark the document as an exhibit for identification therefore was harmless error. See *Kraus* v. *Newton*, 14 Conn. App. 561, 566–67, 542 A.2d 1163 (1988) (failure to mark document for identification during trial harmless error as document was not admissible evidence), aff'd, 211 Conn. 191, 558 A.2d 240 (1989).

In this case, although the court should have marked for identification the certification page of the deposition

taken of Bazos in *George* v. *Rodin*,[25] its failure to do so did not prejudice the plaintiff. The court permitted the plaintiff's counsel to read the document into the record, which is available for our review. The substance of the proffered evidence therefore is preserved. The certification page concerned a deposition of Bazos in another medical malpractice action against Rodin. We conclude that the court properly excluded any evidence that would have informed the jury of other medical malpractice actions against Rodin, as such evidence is more prejudicial than probative of the carelessness and negligence alleged against him in this case.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[25] The plaintiff did not file a motion for review; see Practice Book § 66-6; asking this court to order the trial court to mark the certification page for identification to perfect the record for appeal.

