STATE OF CONNECTICUT *v.* KEVIN LINDSAY
(AC 33835)

DiPentima, C. J., and Gruendel and Borden, Js.

Argued March 13—officially released June 4, 2013

*Deborah G. Stevenson*, assigned counsel, for the appellant (defendant).

*Linda Currie-Zeffiro*, senior assistant state's attorney, with whom, on the brief, were, *John C. Smriga*, state's attorney, and *Joseph Harry*, senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Kevin Lindsay, appeals from the judgment of conviction, rendered after

a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (3).[1] He claims that the trial court improperly (1) denied his motions for a judgment of acquittal because the evidence adduced at trial was insufficient to establish that he caused serious physical injury to the victim and (2) denied his motion for a new trial due to (a) incorrect evidentiary rulings, (b) prosecutorial impropriety and (c) instructional error. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. In the early hours of April 13, 2008, the victim, Julio Nieves, visited the defendant's apartment, located at 25 Sanford Place in Bridgeport, to purchase crack cocaine. The victim had purchased drugs from the defendant at this location on numerous occasions and testified that he was a habitual crack cocaine user. On this occasion, the victim purchased crack cocaine from a different individual at the defendant's apartment. As the victim exited the apartment and walked down a hallway, four men approached, including the defendant. When the defendant told the victim to "get the fuck out of the way," the victim responded in kind. As the victim recounted at trial, the defendant "got angry" and "came towards me in a threatening manner and when he got close enough to swing he started swinging on me, hitting me." As he attempted to defend himself from the defendant's attack, the victim was struck in the back of the head. When he turned around to see who had hit him, the defendant struck the victim on the back of his head, causing him to fall to the floor. At that point, the defendant and others began stomping on the victim's head.

---

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

The victim screamed for them to stop and tried to defend himself before losing consciousness in the hallway.

Emergency medical personnel responded to a life-threatening dispatch at 2:40 a.m. They discovered the victim lying facedown on the ground behind the apartment building. His shirt was pulled up and his pants were down by his ankles. They noticed a shoe print on his upper back, and when they rolled the victim over, they observed multiple bruises and abrasions to his face and "road rash" on his chest, legs and torso. Shayna Green, one of the emergency medical technician responders, explained at trial that the term "road rash" meant that the victim's body looked "like he had been dragged." Green testified that the victim appeared to have been "beaten pretty badly" and was not conscious. As a result, the medical personnel initiated a "priority one transport" to St. Vincent's Medical Center (medical center), where they activated a trauma alert and turned over care of the victim to the trauma team.

Gary Kaml was the trauma surgeon on call in the early hours of April 13, 2008. He responded to a "level one trauma" call, which indicates "the highest tier or highest priority" for "a serious injury [that is] potentially life threatening." Upon first observing the victim, Kaml noted that he "had obvious blunt force trauma to the head primarily and had an altered mental status." Kaml observed "multiple abrasions and contusions all over the body, primarily in the region of the face and scalp." Medical intervention was required to ensure the victim's survival, as a result of which the victim was anesthetized and placed on a breathing tube to assist with his ventilation. The victim ultimately was diagnosed with a traumatic brain injury and remained under Kaml's care for thirty-two days at the medical center. He then was transferred to Gaylord Hospital for rehabilitation care because "[h]e still had some pretty profound deficits

[that] required further care," where he remained for seven weeks. Upon his discharge from Gaylord Hospital, the victim's cognitive deficits remained.

Members of the Bridgeport police department arrived on the scene by the defendant's apartment in the early hours of April 13, 2008, as emergency medical personnel treated the victim. They were unable to find any witnesses or identifying information on the victim. The police department's crime scene identification unit processed the scene, taking photographs and seizing blood samples from a piece of a shirt.[2] Detective Sergeant Giselle Doszpoj visited the medical center in an attempt to contact the victim, but was unsuccessful, as the victim was in a coma. She ultimately suspended the investigation due to the lack of any witnesses or input from the victim.

Doszpoj subsequently received a letter from the victim in January, 2010. In a later correspondence, the victim identified the defendant as one of his assailants.[3] She then assigned Detective Keith Bryant to interview the victim, who obtained a signed statement from him. The victim also identified the defendant from three photographic arrays containing a total of twenty-four individuals.

The defendant was arrested and charged with assault in the first degree in violation of § 53a-59 (a) (3) and conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (3), and a jury trial followed. At the conclusion of the state's case-in-chief, the court granted the defendant's motion

[2] Green testified that when the medical responders first attempted to secure the victim on the scene, they placed a collar around his neck to stabilize his spine and "cut the back of his shirt and rolled him onto a board."

[3] The victim identified his attacker as "Bozo." Doszpoj searched a database of aliases and nicknames maintained by the Bridgeport police department, which identified the defendant as Bozo. At trial, the defendant testified that Bozo was his nickname "since I been born."

to dismiss the conspiracy count, leading the state to file a revised long form information charging the defendant solely with assault in the first degree. The defendant at that time also orally moved for a judgment of acquittal, arguing that the state had not proven that he caused a serious physical injury to the victim. The court denied that motion. The jury thereafter found the defendant guilty of assault in the first degree. The defendant filed postjudgment motions for a judgment of acquittal and a new trial. After hearing argument thereon, the court denied those motions and rendered judgment in accordance with the jury's verdict. The court sentenced the defendant to a total effective term of fourteen years incarceration followed by six years of special parole. From that judgment, the defendant now appeals.

I

The defendant claims that the court improperly denied his motions for a judgment of acquittal because the evidence adduced at trial was insufficient to establish that he caused serious physical injury to the victim. We disagree.

"[T]he [d]ue [p]rocess [c]lause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. . . . The standard of review for a sufficiency of the evidence claim employs a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support [its] verdict. . . .

"It is axiomatic that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [jury] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury] would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Reid*, 123 Conn. App. 383, 391–92, 1 A.3d 1204, cert. denied, 298 Conn. 929, 5 A.3d 490 (2010).

"Causation is an essential element of assault in the first degree; see General Statutes § 53a-59 (a) (3); and, [i]n order for legal causation to exist in a criminal prosecution, the state must prove beyond a reasonable doubt that the defendant was both the cause in fact, or actual cause, as well as the proximate cause of the victim's injuries." (Internal quotation marks omitted.) *State* v. *Collins*, 100 Conn. App. 833, 843, 919 A.2d 1087, cert. denied, 284 Conn. 916, 931 A.2d 937 (2007). In the present case, there is a reasonable view of the evidence that supports the jury's finding that the defendant caused serious physical injury to the victim.[4]

The jury was presented with the victim's firsthand testimony that the defendant instigated the assault and struck the first blows to his person, that it was the defendant's blow to the back of his head which knocked him to the floor and that the defendant then kicked and stomped him in the head. The jury, as sole arbiter of credibility, was free to believe that testimony. See *State* v. *Russell*, 101 Conn. App. 298, 316, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007). The jury likewise was free to credit Kaml's testimony that "[i]t was clear to me from the location and the multiple nature of the bruises around the head and the scalp that [the victim] had been struck more than once" and that, although he could not pinpoint one specific blow that caused the traumatic brain injury, it was equally conceivable that "every one of [the blows to the victim's head] contributed to the injury . . . ." On the basis of that testimony, the jury reasonably could have concluded that the defendant caused a foreseeable serious physical injury to the victim.

The defendant nevertheless asserts that the actions of others who also struck the victim during the altercation

---

[4] To be clear, the defendant in this appeal does not dispute the fact that the victim suffered a serious physical injury. He claims only that the state failed to prove that he caused that injury.

constitute intervening causes that relieve the defendant of liability. The court's charge to the jury on that issue, which mirrors the model criminal jury instruction from the judicial branch website; see Connecticut Criminal Jury Instructions § 2.6-1 (4th Ed. 2007), available at http://jud.ct.gov/JI/Criminal/part2/2.6-1.htm (last visited May 22, 2013); stated in relevant part: "The doctrine of intervening cause is used as a dividing line between two closely related factual situations. One, when two or more persons or forces, one of which was set in motion by the defendant, combined to cause the person's injury, the doctrine of intervening cause will not relieve the defendant of criminal responsibility. And two, when an unforeseeable act or force intervenes in such a powerful way as to become the proximate cause of the injury, the doctrine of intervening cause will relieve the defendant from criminal responsibility even though his or her conduct contributed in fact to the injury. . . . [W]hen more than one factor contributes in a chain of events to cause injury, in order to be the proximate cause of those injuries the defendant's conduct must have been the cause that naturally set in motion the operation of the fact that accomplished the injury. When the other circumstances constitute a concurring or contributing cause of the injury, the defendant will be held responsible. When the other circumstances constitute an intervening cause of the injury, the defendant will not be held responsible. It is a question of fact for you the jury to determine."

On the evidence before it, the jury reasonably could have found that the conduct of others in striking the victim was a concurring cause of the injuries he sustained. The jury was presented with evidence that the defendant set the events of April 13, 2008, in motion when he first attacked the victim. Although the victim testified that others also struck him during the assault, the evidence before the jury indicates that it was the

defendant's blow to the back of his head that caused the victim to fall to the ground. The evidence further indicates that the defendant continued the assault by stomping on the victim's head, an act in which the others joined. On that evidentiary basis, the jury reasonably could have concluded that the defendant's initial assault of the victim was the catalyst that set into motion the conduct of the other individuals, and that the acts of the others merely supplied "a concurring or contributing cause of the injury . . . ." *State* v. *Munoz*, 233 Conn. 106, 124, 659 A.2d 683 (1995).

Construing the evidence in the light most favorable to sustaining the verdict, the jury reasonably could have concluded beyond a reasonable doubt that the defendant's conduct in striking the victim on the back of the head and then repeatedly stomping on his head caused serious physical injury to the victim. Accordingly, the court properly denied the motions for a judgment of acquittal.

## II

The defendant next claims that the court improperly denied his motion for a new trial. Specifically, he alleges that a new trial was warranted due to (1) incorrect evidentiary rulings, (2) prosecutorial impropriety and (3) instructional error.[5] "[A]ppellate review of a trial court's decision . . . denying a motion for a new trial must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . Thus, a motion for a new trial is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds. . . . In our review of the denial of a motion for [a new trial], we have recognized the broad discretion that is vested in the trial court to decide whether

[5] The defendant also asserts that evidential insufficiency warranted the granting of his motion for a new trial, a claim we already have rejected.

an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Guilbert*, 306 Conn. 218, 271, 49 A.3d 705 (2012). With that standard in mind, we turn to the specific claims raised by the defendant.

## A

The defendant contests the propriety of two evidentiary rulings. "The standard of review of an evidentiary challenge is well established. Upon review of a trial court's decision, we will set aside an evidentiary ruling only when there has been a clear abuse of discretion. . . . The trial court has wide discretion in determining the relevancy of evidence . . . and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Golodner*, 305 Conn. 330, 347, 46 A.3d 71 (2012).

"Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . Before a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . A determination of harm requires us to evaluate the effect of the evidentiary impropriety in the context of the totality of the evidence adduced at trial." (Citation omitted; internal quotation marks omitted.) *Filippelli* v. *Saint Mary's Hospital*, 141 Conn. App. 594, 601, 61 A.3d 1198 (2013). Evidentiary error that is not constitutional in nature "is harmless when an appellate

court has a fair assurance that the [error] did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Guilbert*, supra, 306 Conn. 265.

1

The defendant first claims that the court improperly admitted evidence of two prior felony convictions. Prior to the commencement of trial, the court ruled that the defendant's convictions for robbery in the first degree in 1985 and burglary in the second degree in 1992 would be admissible for impeachment purposes in the event that the defendant testified at trial.[6] The defendant testified at trial in his defense, claiming, inter alia, that he had no involvement in the victim's assault and that "whatever went on there it had nothing to do with me . . . ." During his direct examination, defense counsel raised the issue of the two prior felony convictions, which the defendant admitted. The prosecutor likewise referenced those two convictions in his cross-examination of the defendant.

On appeal, the defendant claims that the court abused its discretion in admitting evidence of those two prior felony convictions. "Generally, evidence that a witness has been convicted of a crime is admissible to impeach his credibility if the crime was punishable by imprisonment for more than one year. . . . In determining whether to admit evidence of a conviction, the court shall consider: (1) the extent of the prejudice likely to arise; (2) the significance of the particular crime in indicating untruthfulness; and (3) the remoteness in time of the conviction. . . . Moreover, [i]n evaluating the separate ingredients to be weighed in the balancing process, there is no way to quantify them in mathematical terms. . . . Therefore, [t]he trial court has wide

---

[6] The court ruled that the defendant's other convictions were inadmissible, as they either were "too remote" or involved crimes classified as misdemeanors.

discretion in this balancing determination and every reasonable presumption should be given in favor of the correctness of the court's ruling . . . . Reversal is required only whe[n] an abuse of discretion is manifest or whe[n] injustice appears to have been done. . . . With respect to the remoteness prong of the balancing test, [our Supreme Court has] endorsed a general guideline of ten years from conviction or release from confinement for that conviction, whichever is later, as an appropriate limitation on the use of a witness' prior conviction. . . . [T]he ten year benchmark . . . is not an absolute bar to the use of a conviction that is more than ten years old, but, rather, serves merely as a guide to assist the trial judge in evaluating the conviction's remoteness. . . . [The court has] recognized, moreover, that convictions having some special significance upon the issue of veracity surmount the standard bar of ten years and qualify for the balancing of probative value against prejudice." (Citations omitted; internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 738–39, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006); see also Conn. Code Evid. § 6-7 (a).

All three of the aforementioned factors support the court's determination that the prior convictions were admissible for impeachment purposes. First, as the court noted, the degree of prejudice stemming from the admission of the defendant's convictions for robbery and burglary was minimized by the fact that those convictions differed significantly from the charged crime of assault in the first degree. The prejudice further was minimized by the court's limiting instruction to the jury, which cautioned the jury that "[t]he fact that [the defendant] admitted he was previously convicted of several crimes is only admissible on the question of the credibility of the [defendant]. . . . The defendant's criminal record bears only on [his] credibility."

Second, the crimes of which the defendant was convicted indicate untruthfulness. "[C]rimes involving larcenous intent imply a general disposition toward dishonesty or a tendency to make false statements. . . . [I]n common human experience acts of deceit, fraud, cheating, or stealing . . . are universally regarded as conduct which reflects on a [person's] honesty and integrity . . . ." (Internal quotation marks omitted.) *State* v. *Erhardt*, 90 Conn. App. 853, 868, 879 A.2d 561, cert. denied, 276 Conn. 906, 884 A.2d 1028 (2005); see also *State* v. *Askew*, 245 Conn. 351, 364, 716 A.2d 36 (1998) (crimes involving larcenous intent "obviously bear heavily on the credibility of one who has been convicted of them"). Convictions for burglary and robbery are highly probative of a defendant's veracity. *State* v. *Skakel*, supra, 276 Conn. 739; *State* v. *Vitale*, 76 Conn. App. 1, 8, 818 A.2d 134, cert. denied, 264 Conn. 906, 826 A.2d 178 (2003).

Third, although the two convictions exceeded the ten year benchmark, the court nevertheless reasonably could have determined that they were not too remote given the fact that they possessed "special significance upon the issue of veracity . . . ." (Internal quotation marks omitted.) *State* v. *Skakel*, supra, 739. As a result, we conclude that the court did not abuse its discretion in admitting evidence of the defendant's burglary and robbery convictions.

2

The defendant also alleges that the court improperly admitted a statement of his probation officer, Monique Wilson. At trial, Wilson testified that she twice attempted to initiate violation of probation proceedings against the defendant. The defendant immediately objected and the jury was excused. The state then made an offer of proof outside the presence of the jury regarding its line of questioning on that issue. The court ruled

that it would "allow [the state] to ask [Wilson], but the response [would] be limited to that she told [the defendant] two times that she could not violate [his probation] absent a conviction. And that's it." Defense counsel then asked the court to "order it stricken [from] her previous testimony that she tried to violate [his probation] on two occasions, because that's still hanging out there," and the court responded affirmatively. When Wilson's testimony before the jury resumed, she stated, consistent with the court's earlier ruling, that she twice had advised the defendant of violation of probation procedures that required a conviction. It nevertheless is undisputed that the court never ordered Wilson's previous testimony stricken in the presence of the jury. The defendant claims that the court's failure to do so warrants a new trial.

The defendant has not satisfied his burden to establish that the court's failure to order Wilson's testimony stricken before the jury was harmful. The defendant himself testified at trial that he was on probation and that the conditions of his probation required, inter alia, that he not engage in any criminal activities. More specifically, the defendant testified that "[a]nything that constitutes breaking the law is a violation." Wilson never testified as to the basis of her attempts to initiate violation of probation proceedings against him. Moreover, her testimony that her attempts were unsuccessful very well may have benefitted the defendant, as it suggests that the underlying transgressions did not, in fact, transpire. As a result, we cannot say that the defendant has demonstrated that the court's failure to strike Wilson's remark substantially affected the jury's verdict.

B

The defendant contends that the prosecutor, during the rebuttal portion of closing argument, improperly expressed his opinion that the defendant was a liar

and commented on the defendant's trial strategy. In evaluating claims of prosecutorial impropriety, we determine, first, if impropriety occurred and, second, if it did, whether it infringed on the defendant's due process right to a fair trial. See *State* v. *Darryl W.*, 303 Conn. 353, 375, 33 A.3d 239 (2012). The initial inquiry requires a fact specific determination as to whether certain conduct was improper, while the latter requires a constitutional determination as to whether a defendant's sixth amendment right was violated.[7]

"Because the claimed prosecutorial [impropriety] occurred during closing arguments, we advance the following legal principles. [P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [an impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Skidd*, 104 Conn. App. 46, 64–65, 932 A.2d 416 (2007). Our Supreme Court recently clarified that "when a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show . . . that the remarks were improper . . . ." *State* v. *Payne*, 303 Conn. 538, 562–63, 34 A.3d 370 (2012).

---

[7] That constitutional analysis entails consideration of the *Williams* factors, as outlined in *State* v. *Stevenson*, 269 Conn. 563, 573–75, 849 A.2d 626 (2004).

1

The defendant first claims that the prosecutor improperly expressed his opinion that the defendant was a liar. We disagree.

The following additional facts are relevant to that claim. During his closing argument, defense counsel stated in relevant part: "[T]here are other things to consider here. [The victim has] got felony convictions. . . . You can consider that. It doesn't mean someone's automatically lying, but it's something you can consider. [The victim] also indicated he was involved in dishonest activities, you know, shoplifting from stores. You can consider that." Defense counsel later remarked that "[f]or the state to prove its case, you have to find beyond a reasonable doubt that [the defendant] is not telling you the truth, that he's lying, because there's no way you can believe him and also believe the state's case in regard to [the defendant] because he says [he] was not involved. You have to find beyond a reasonable doubt that he's lying. . . . So if [the defendant] wanted to lie, if the state's saying he made up a story . . . ."

At the outset of his rebuttal, the prosecutor prefaced his remarks as follows: "[F]irst of all, I want you to understand something. The story's preparation, what they could have said, what they wouldn't have said, I have never called anyone a liar. I'm not allowed to have an opinion nor will I call you a liar, okay? My responsibility is to provide you with the evidence. I'm not throwing dirt on anybody. But look at what defense counsel is bringing up for you to consider." The prosecutor proceeded to rebut certain points raised by defense counsel. In response to defense counsel's statements regarding the victim's criminal record, the prosecutor stated in relevant part: "Records. Consider the the records. . . . [W]hy can't you consider the defendant's record? According to [defense counsel], the victim is a

thief, a liar, a—he steals. The defendant burglarizes and robs, and he has ten years hanging over his head if he's convicted . . . . Who had more incentive to go over there and make a story? Now, the state never said [the defendant] lied. Can't say that about people, I can't say that about witnesses. His Honor will say it's improper argument. But listen to his story: I had minimal involvement, I was there, didn't get in a fight; I saw it, you know, the guys coming, didn't get in the fight. I was there about that time, didn't get in a fight. I left just before. I came back the morning of—or after. See what I mean? He didn't change it, he just adjusted it, that's what he did. The facts still changed. You got eight inches of paperwork saying the man was beaten into a coma. [The victim] says the defendant did it. That has never changed."

Later in his rebuttal, the prosecutor highlighted the defendant's testimony regarding the existence of pit bulls in the neighborhood. He stated: "[T]he defendant takes the stand and says everybody has pit bulls, everybody has pit bulls; yes, everybody has pit bulls. All right. Then when I asked him who. Well, I don't know, I mean, you know. Do the elderly people have it? No. I don't know. Who? You're saying pit bulls are the dog of choice of drug dealers? Well, I don't know, I don't know. Who's changing stories on the stand? . . . Come on, ladies and gentlemen, who, all right, is more credible?"

We perceive no impropriety in the aforementioned statements. The prosecutor merely drew the jury's attention to facts already in evidence and encouraged the jury to consider that evidence in assessing whether the defendant's testimony was credible. As an advocate, the prosecutor permissibly may "employ forceful arguments based upon the facts in evidence and the reasonable inferences drawn from such facts." (Internal quotation marks omitted.) *State* v. *Tate*, 85 Conn. App. 365, 374, 857 A.2d 394, cert. denied, 272 Conn. 901,

863 A.2d 696 (2004). Notably, the prosecutor repeatedly reminded the jury that he could not express an opinion on that issue. It thus is not surprising that defense counsel did not object to any of those statements at the time they were uttered. We cannot say that the prosecutor's rebuttal statements strayed impermissibly beyond the evidence or the inferences that the jury reasonably could have drawn from it, particularly when defense counsel had employed an almost identical argument in his closing remarks.

2

The defendant also argues that the prosecutor improperly commented on the defendant's trial strategy. In his closing argument, defense counsel displayed a highlighted statement from a portion of a medical record projected from a laptop computer, which stated that "[i]n addition [the victim's] symptoms or mental status likely worsened due to pain, cocaine withdrawal and medications he's receiving." During his rebuttal, the prosecutor attempted to address that highlighted statement and the following colloquy ensued:

"[The Prosecutor]: That highlighted statement. Why didn't defense counsel ask any witness about that highlighted statement, but yet waited to—

"[Defense Counsel]: Objection, Your Honor, that's improper argument.

"[The Prosecutor]: What's improper about it, Judge?

"[Defense Counsel]: Questioning tactics.

"The Court: No, I'll allow it.

"[The Prosecutor]: We could have found out about it. But let's highlight it; let's make the victim look bad. I guess the hooker deserves what she gets and [the victim] the junkie deserved what he got."

We agree with the trial court that the prosecutor's statement was not improper. The statement was made during rebuttal and it drew the jury's attention to the fact that the defendant had not presented any evidence or testimony at trial to explain the highlighted statement for the jury. It is well established that "[a] prosecutor may respond to the argument of defense counsel during rebuttal." *State* v. *Galarza*, 97 Conn. App. 444, 471, 906 A.2d 685, cert. denied, 280 Conn. 936, 909 A.2d 962 (2006). As this court has observed, "our case law consistently has held that invited argument is not improper." *State* v. *Collazo*, 113 Conn. App. 651, 671 n.12, 967 A.2d 597, cert. denied, 293 Conn. 904, 976 A.2d 705 (2009). Because the record demonstrates that the prosecutor's remark was invited by the defendant's argument, the defendant's claim fails.

C

The defendant's final set of claims allege instructional error. The standard by which we review such claims is well established. "The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [the jury] might find to be established . . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party. . . . In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 179, 920 A.2d 236 (2007). "[T]he whole charge must be considered from the standpoint of its effect on the [jurors] in

guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . [W]e must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." (Citation omitted; internal quotation marks omitted.) *State* v. *Coltherst*, 263 Conn. 478, 490, 820 A.2d 1024 (2003).

Following the close of evidence, the court conducted a charging conference with the parties off the record. At the outset of the proceeding on May 13, 2011, the following colloquy transpired:

"The Court: "Good morning, counsel. Just to put on the record what we covered in the charge conference this morning. There . . . are no lesser included offenses being claimed. There's no self-defense claim. There are inconsistent statements by the complaining witness and it's unresolved at this point whether there are any inconsistent statements by the defendant. There [are] limiting instructions on convictions and the misconduct by the victim and a limiting instruction on convictions for the defendant. There is no need for a *Ledbetter* special instruction[8] on the facts that have been elicited here during the trial. The question of police competency, there will be a charge on that. There was— the court is going . . . to adopt the defendant's request for proximate cause but I'm going to be adding another paragraph [regarding the doctrine of intervening cause]. . . . Is there anything else that you want to bring to my attention on the charge conference?"

"[The Prosecutor]: Not on the charge conference, Your Honor, no.

"[Defense Counsel]: No, Your Honor. Just for the record, in light of a recent Superior Court decision,

[8] See *State* v. *Ledbetter*, 275 Conn 534, 575, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 536 (2006).

although we've been informed by the court of the subject matters of the charge it would give, you have not yet reviewed the charge, and I'll take exceptions if I find there's something I object to during the charge.

"The Court: Right."

1

The defendant's first allegation of instructional impropriety requires little discussion. He asserts that the court failed to provide the written instructions to counsel prior to instructing the jury. He provides no authority to support that allegation. To the contrary, our Supreme Court has observed that, although preferable, a trial court is not required to "always provide the parties with an advance written copy of the charges . . . ." *State* v. *Baptiste*, 302 Conn. 46, 57, 23 A.3d 1233 (2011). In addition, the preceding colloquy plainly indicates that defense counsel had no objection to the court's inclusion of a new instruction on intervening cause and that he indicated that he would "take exceptions" if he found something objectionable during the charge. As a result, his claim is without merit.

2

The defendant next claims that the court's instructions "failed to inform the jury that the state was required to prove, beyond a reasonable doubt, the two elements of causation—actual and proximate cause." We disagree.

Significantly, the court adopted in large measure the defendant's request to charge on the issue of causation. That request to charge stated in relevant part: "The fourth element [that the state must prove] is that the defendant caused serious physical injury to another person. This means that the defendant's conduct was the proximate cause of the person's injuries. You must

find it proved beyond a reasonable doubt that [the victim] was injured as a result of the actions of the defendant. The state must prove beyond a reasonable doubt that the defendant proximately caused the injuries. Proximate cause does not necessarily mean the last act or cause, or the act in point of time nearest to the injuries. The concept of proximate cause incorporates the principle that an accused may be charged with a criminal offense even though his acts were not the immediate cause of the injury. An act or omission is the proximate cause of the injury when it substantially and materially contributed, in a natural and continuous sequence, unbroken by any efficient intervening cause, to the injuries. It is a cause without which the injuries would not have occurred. It is a predominating cause, a substantial factor from which the injuries followed as a natural, direct and immediate consequence. The state must prove beyond a reasonable doubt that there was no intervening cause of [the] victim's injuries. An intervening cause exists where the defendant's conduct is a cause and factor of the injuries, but nonetheless something else subsequently occurs—which may be an act of some other person that does more than supply a concurring or contributing cause of the injury. An intervening cause is unforeseeable and sufficiently powerful in its effect that it serves to relieve the defendant of criminal responsibility for his conduct. In such a case, the defendant's conduct is not the proximate cause of the injuries."

The court's instruction incorporated all but the last three sentences of that requested charge, which addressed the issue of intervening cause. The alleged defect in the court's instruction advanced in this appeal—the failure to specifically instruct on actual cause—likewise plagues the defendant's request to charge.[9] "The term induced error, or invited error, has

---

[9] The defendant on appeal specifically contends that "[t]he trial court made no mention of actual cause in the jury instructions, the state's burden

been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . [Our Supreme Court] has found induced error undeserving of appellate review in the context of a jury instruction claim when the defense has affirmatively requested the challenged jury instruction . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 468–69, 10 A.3d 942 (2011). "[T]o allow [a] defendant to seek reversal [after] . . . his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state [and the trial court] with that claim on appeal." (Internal quotation marks omitted.) *State* v. *Gibson*, 270 Conn. 55, 67, 850 A.2d 1040 (2004). The defendant in the present case induced the alleged error of which he now complains. Indeed, defense counsel specifically stated at the conclusion of the court's charge: "No exceptions. I mean, I submitted a request to charge. Your Honor's instructions tracked that fairly closely but just to the extent it was different I'll take an exception. I don't think it's required, but no additional matters to be heard."

3

As a final matter, the defendant maintains that the court improperly instructed the jury on the doctrine of intervening cause. The court's instruction mirrors the model criminal jury instruction from the judicial branch website, as discussed in part I of this opinion. Examination of the court's instruction reveals that it quotes from, and comports with, the explication of that doctrine set forth by our Supreme Court in *State* v. *Munoz*, supra,

regarding it, or actual cause in relation to proximate cause. . . . [It] was defective in that it did not differentiate between actual and proximate cause, and did not indicate that the state's burden was to prove both actual and proximate cause."

233 Conn. 124–25. Accordingly, the defendant's challenge is unavailing.

### D

In sum, the defendant's various claims alleging evidential, prosecutorial and instructional impropriety are not convincing. Mindful of the broad discretion afforded to the trial court in determining whether the granting of a postjudgment motion for a new trial is warranted; see *State* v. *Guilbert*, supra, 306 Conn. 271; we cannot conclude that the court in this case abused that discretion in denying the defendant's motion.

The judgment is affirmed.

In this opinion the other judges concurred.