STATE OF CONNECTICUT *v.* JOSEPH VANALLEN
(AC 33369)

DiPentima, C. J., and Robinson and Espinosa, Js.

Argued November 26, 2012—officially released February 12, 2013

*Elizabeth M. Inkster,* assigned counsel, and *Freesia Singngam,* certified legal intern, for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom, on the brief, were *Gail P. Hardy,* state's attorney, and *Robert F. Mullins,* assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Joseph VanAllen, appeals from the judgment of conviction, rendered following a jury trial, of carrying a pistol without a permit in violation of General Statutes § 29-35 (a), criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1), unlawful discharge of a firearm in violation of General Statutes § 53-203, risk of injury to a child in violation of General Statutes § 53-21 (a) (1), breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1) and two counts of reckless endangerment in the first degree in violation of General Statutes § 53a-63.[1] The defendant claims that the court improperly (1) denied his motion for a judgment of acquittal with regard to the risk of injury to a child and reckless endangerment counts and (2) admitted certain evidence, namely, bullet shell casings found at the scene of the crime. We affirm the judgment of the trial court.

The jury reasonably could have found that on December 25, 2009, the defendant was at his apartment in Hartford with his two year old daughter. Ruth Whaley, the child's mother, joined by Camilla Williams and Nicole Williams, drove to the apartment shortly after 7 p.m. to pick up the child. The defendant and Whaley were not on good terms that day. Whaley parked her

---

[1] The court imposed a total effective sentence of ten years incarceration, execution suspended after five years, followed by five years of probation.

automobile in a parking area adjacent to the apartment complex. Upon their arrival, Camilla Williams exited the automobile, retrieved the child from the defendant and secured the child in a car seat in the rear of the automobile, behind the passenger's seat. Camilla Williams sat in the rear of the automobile, next to the child.

An argument between the defendant and Whaley ensued. During the altercation, while standing next to the driver's side of the automobile, the defendant pointed a handgun at Whaley's head, while she was seated in the automobile, before pointing the handgun in the air and firing the gun several times. Whaley quickly drove from the parking area, the defendant fled the scene and Camilla Williams called the police to report the incident. The defendant's arrest and conviction followed.

## I

First, the defendant claims that the court improperly denied his motion for a judgment of acquittal with regard to the risk of injury to a child and reckless endangerment counts of the state's amended information. We disagree.

With regard to the risk of injury to a child count, the state charged that on December 25, 2009, the defendant caused his daughter "to be placed in . . . a situation where the life and limb of such child was endangered . . . ." With regard to the reckless endangerment counts, the state charged that on December 25, 2009, the defendant "did recklessly engage in conduct that created a risk of serious physical injury to another person . . . ." The reckless endangerment charges concerned the defendant's conduct toward Whaley and Camilla Williams. The state's theory of the case was that the defendant engaged in the criminal conduct alleged by pointing a loaded handgun at Whaley while she was sitting in an automobile with her daughter,

Camilla Williams and Nicole Williams, and by firing the handgun into the air several times.

At the close of the state's case-in-chief, the defendant moved for a judgment of acquittal as to all counts of the state's amended information. On appeal, the defendant argues, as he did at trial, that the evidence was insufficient to sustain a conviction with regard to the risk of injury to a child count because his conduct did not create a situation that endangered the life and limb of his child. Also, he argues that the evidence was insufficient to sustain a conviction with regard to the reckless endangerment counts because his conduct did not create a risk of serious physical injury to Whaley or Camilla Williams.

"In reviewing the denial of a motion for [a] judgment of acquittal, we employ a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether, from all of the evidence and the reasonable inferences drawn therefrom, the jury reasonably could have concluded that the defendant was guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State v. Green*, 81 Conn. App. 152, 155, 838 A.2d 1030, cert. denied, 268 Conn. 909, 845 A.2d 413 (2004).

The defendant acknowledges that there was testimonial evidence that he used a handgun in the manner alleged by the state. His sufficiency claim is limited to the risk associated with that conduct. He argues that the evidence did not support a finding that the discharged bullets or the shell casings from those bullets could have caused physical harm to any occupant of Whaley's automobile.

The evidence amply supported a finding that the defendant, from just outside of Whaley's automobile, pointed an operable, loaded handgun at Whaley's head

while she was in an automobile and in very close proximity to his daughter, Camilla Williams and Nicole Williams. The defendant did so in the course of a heated argument with Whaley. From this evidence, the jury reasonably could have found beyond a reasonable doubt that the defendant created a risk of serious physical injury to Whaley and Camilla Williams. See General Statutes § 53a-63 (requiring evidence that defendant "creates a risk of serious physical injury to another person"); State v. Wayne, 60 Conn. App. 761, 767, 760 A.2d 1265 (2000) (holding that one creates risk of serious physical injury by pointing loaded gun at another). Just as the jury reasonably could have found that the defendant created such a risk to the other occupants of the automobile, the jury reasonably could have found beyond a reasonable doubt that the defendant created a situation that endangered the life and limb of his daughter. See General Statutes § 53-21 (a) (1) (requiring evidence that defendant "causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered"). Accordingly, we conclude that the court properly denied the motion for a judgment of acquittal with regard to the crimes at issue.

II

Next, the defendant claims that the court improperly admitted into evidence bullet shell casings found at the scene of the crime. We disagree.

Whaley testified that the defendant pointed a "small gun" at her face and then fired the handgun in the air four or five times. Camilla Williams testified that, on the basis of her observation of the handgun, as well as the sound it made when it was fired, she believed that the defendant fired either a .22 caliber handgun or a .25 caliber handgun at the crime scene. Nathan Buynicki, a news photographer who was working near the crime

scene at the time of the shooting, testified that he saw a man discharge a gun into the air approximately five times.

The state presented the testimony of Tom Phelom, a Hartford police officer who arrived at the crime scene on December 25, 2009. Phelom testified that, at the scene, Whaley and Camilla Williams told him that the defendant had discharged a firearm. Phelom searched for and seized five shell casings in a parking area near the defendant's apartment.

The prosecutor indicated that he intended to introduce the shell casings into evidence. Outside of the presence of the jury, the defendant's attorney objected to the admission of the shell casings on the grounds that the evidence was not relevant and was more prejudicial than probative. The defendant's attorney argued that the state did not recover a handgun and that there was no evidence linking the shell casings to the defendant. The prosecutor represented that the state would present evidence that all five shell casings came from the same handgun and that the testimony elicited at trial sufficiently demonstrated the probative value of the evidence.[2] The court admitted the evidence over the defendant's objection.

Asserting the relevancy and unfair prejudice arguments he raised at trial, the defendant claims that the court improperly admitted the bullet shell casings. "Unless an evidentiary ruling involves a clear misconception of the law, [t]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be

---

[2] Later, the state presented testimony from Megan E. Murasso, a firearms and tool mark examiner. Murasso testified that her examination of the shell casings led her to verify that they were from .25 caliber ammunition designed to be fired in a semiautomatic pistol, and they had been fired from the same firearm.

overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 219, 881 A.2d 160 (2005).

Here, there is no showing that the court's rulings reflected a clear misconception of relevant legal principles. We readily conclude that the court properly determined that the evidence was relevant. See Conn. Code Evid. § 4-1. Whether the defendant brandished and discharged a gun was a disputed, material issue of fact. There was ample testimonial evidence that the defendant used a small caliber handgun. Because shell casings logically tend to prove that a firearm was discharged in the vicinity in which they are found, the discovery of the five small caliber shell casings, in the area in which the incident occurred, shortly after it occurred, made it more likely that the defendant engaged in the conduct with which he was charged. The defense availed itself of the opportunity to argue vigorously before the jury that it was unreasonable to draw such an inference from the evidence.

In summary fashion, the defendant labels the shell casings as "highly prejudicial." He then states: "[T]he prosecution relied on the bullet shell casings to put a gun in the defendant's hand at trial. Furthermore, the shell casings were the only evidence that the shooter used an automatic or semiautomatic gun. The state never presented any other evidence that the gun used was one that would emit shell casings and not a revolver." Also, the defendant asserts that, without the shell casings, the state's case was not as strong.

The defendant invites us to analyze the shell casings in artificial isolation but, in assessing their prejudicial

nature, we properly view them against the matrix of the other evidence presented at trial. Here, the challenged evidence was consistent with, and thus not far more prejudicial than, other evidence presented by the state. The fact that, apart from other evidence, the shell casings by their nature tended to prove that the handgun used by the defendant was a type that discharged shell casings does not lead us to conclude that they were unfairly prejudicial to the defense. Further, the argument that the evidence strengthened the state's case is not persuasive, for all adverse evidence is prejudicial to the defense. See Conn. Code Evid. § 4-3 ("[r]elevant evidence may be excluded if its probative value is outweighed by the danger of *unfair* prejudice" [emphasis added]).

The judgment is affirmed.