### STATE OF CONNECTICUT *v.* ALEXANDER HOLLEY, JR.
### (AC 34085)

Beach, Robinson and Schaller, Js.

Argued April 9—officially released July 30, 2013

*Shannon Daley*, certified legal intern, with whom were *Timothy H. Everett*, assigned counsel, *Christina Lindberg* and *Leah McGuckin*, certified legal interns, and, on the brief, *Sabrina Copp*, *Sara McCollum* and *Andrew Veale*, certified legal interns, for the appellant (defendant).

*Jennifer Miller*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Roger Dobris*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Alexander Holley, Jr., appeals from the judgment of conviction, rendered following a jury trial, of one count of risk of injury to a child in violation of General Statutes § 53-21. On appeal,

the defendant claims that (1) there was insufficient evidence to support his conviction of risk of injury to a child and (2) the prosecutor committed certain improprieties during closing argument that deprived him of a fair trial. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. On the afternoon of August 21, 2010, K,[1] the complainant, received a telephone call from her male friend. He informed K of a paid opportunity to braid the hair of the defendant's girlfriend in New Haven. K, along with her young child, Z, went to New Haven and met with her friend, the defendant, and the defendant's girlfriend. They traveled together to the defendant's apartment. When they arrived, K, Z, and the defendant's girlfriend entered the bedroom where Z sat on the bed watching television as K braided the girlfriend's hair in a nearby chair. Z eventually fell asleep at the foot of the bed. Sometime after Z had fallen asleep, the defendant entered the bedroom and began enticing his girlfriend to perform oral sex on him. K then left the bedroom in order to speak to her male friend in the kitchen. When the defendant followed K into the kitchen, she informed him that she intended to leave. The defendant began "clinking" what K thought was a gun, at which point K agreed to finish braiding the girlfriend's hair.

At this point, K's friend left the apartment under the pretext of going to a store. K returned to the bedroom and continued braiding the girlfriend's hair while Z still slept on the bed. The defendant then entered the bedroom, locked the door behind him, and smoked crack cocaine with his girlfriend, leaving the crack cocaine and paraphernalia on the bedroom floor when they were finished.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Meanwhile, K's friend flagged down New Haven police Officer Paul Bicki, telling Bicki that his female friend, K, along with her young child, Z, were in danger and needed police assistance at the defendant's apartment. Bicki went to the defendant's apartment, announced his presence, and requested that someone come to the door. He received no response. Bicki observed that a light was on in the bedroom where K and Z purportedly were in danger and contacted his supervisor for further instructions. With the assistance of other officers who had arrived on scene, Bicki gained entry to the apartment through a living room window.[2]

Upon entering the apartment, Bicki immediately opened the front door and let the other officers in. The officers approached the bedroom door and knocked, but received no response. The officers attempted to open the door, but discovered that the defendant was holding it shut. After opening the door, Bicki and fellow Officer Kealyn Nivakoff observed the defendant standing at the door, K and the defendant's girlfriend lying naked on the bed, and Z lying at the foot of the same bed. The defendant refused to comply with the officers' verbal commands to lie on the floor. When the officers attempted to restrain the defendant, a physical altercation ensued in a "very small space" between the bed and a wall. Bicki perceived the physical altercation as a "violent struggle . . . ." The defendant flailed, punched, and kicked at the five officers who were attempting to restrain him. The bed, which Z was lying on throughout the altercation, was knocked back and forth significantly, "enough that if somebody who was sleeping [on the bed] would absolutely be woken up." The police eventually restrained and arrested the defendant.

---

[2] Prior to trial, the defendant filed a motion to suppress evidence seized by New Haven police officers following their warrantless entry of his apartment. The trial court denied the motion. The defendant on appeal does not challenge the trial court's suppression ruling.

The state, in a long form information filed on August 16, 2011, charged the defendant with two counts of kidnapping in the first degree with a firearm in violation of General Statutes § 53a-92a, one count of aggravated sexual assault in the first degree in violation of General Statutes § 53a-70a (a), and one count of risk of injury to a child in violation of § 53-21. The jury found the defendant guilty of risk of injury to a child and not guilty on each of the remaining charges. The court sentenced the defendant to a total effective term of fifteen months of imprisonment. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the evidence presented at trial was insufficient to support his conviction of risk of injury to a child in violation of § 53-21. Specifically, the defendant contends that the state failed to establish that his conduct, up to and during his physical altercation with the police, created a situation endangering the life or limb of Z. We are not persuaded.

As a preliminary matter, we identify the applicable standard of review. "The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . [P]roof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable

view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Gene C.*, 140 Conn. App. 241, 245–46, 57 A.3d 885, cert. denied, 308 Conn. 928, 64 A.3d 120 (2013).

In the present case, the defendant was charged under the situation prong of § 53-21 (a) (1). Section 53-21 (a) provides in relevant part that "[a]ny person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered . . . shall be guilty of a class C felony . . . ." "Conduct is wilful when done purposefully and with knowledge of [its] likely consequences. . . . Moreover, [s]pecific intent is not a necessary requirement of the statute. Rather, the intent to do some act coupled with a reckless disregard of the consequences . . . of that act is sufficient to [establish] a violation of the statute." (Citations omitted; internal quotation marks omitted.) *State* v. *Maurice M.*, 303 Conn. 18, 28, 31 A.3d 1063 (2011).

The defendant does not dispute his involvement in a physical altercation with police officers in close proximity to the child. His sufficiency claim is limited to the magnitude of the risk implicated by his conduct.[3]

[3] The defendant invites this court to consider the presence of five police officers and two other adults in the room as mitigating any likely risk to Z's life or limb. While we consider the presence of adults as part of the overall circumstances in which the defendant acted, the defendant's argument is unavailing. The jury was presented with evidence that, if credited, would support it finding that the presence of officers and adults in the bedroom did not mitigate any risk to the child. The jury heard testimony that the physical altercation between the officers and the defendant occurred immediately after the officers entered the bedroom. The officers were able to secure Z only after restraining the defendant. From this, the jury reasonably could have inferred that the officers were principally concerned with restraining the defendant, not securing Z, and that the two other adults in the room did not act to protect Z during the altercation.

Accordingly, the question that we must address is "whether there was sufficient evidence that the defendant's conduct was of such a character that it demonstrated a reckless disregard of the consequences."[4] (Internal quotation marks omitted.) Id., 30.

The jury heard testimony that the defendant, aware of Z's presence in the bedroom, held the bedroom door shut upon learning of the officers' presence. From this, the jury reasonably could have inferred that the defendant intentionally barricaded the door to prevent the police from entering the bedroom. The jury also heard testimony that the defendant refused to comply with verbal commands to lie on the floor and engaged five officers in a "violent struggle" in close proximity to Z. The jury heard specific testimony that the defendant flailed, "[tried to throw] punches . . . and [kicked]" at the five officers, and that this altercation knocked into the bed where Z was lying, causing it to move back and forth significantly. In light of this evidence, and on the basis of its common knowledge and experience, the jury reasonably could have inferred that engaging five police officers in a physical altercation in close proximity to a child would create a situation likely to endanger that child's life or limb. *State* v. *Padua*, 273 Conn. 138, 157, 869 A.2d 192 (2005) (jurors expected to apply common knowledge and experience to evidence). Construing the evidence in the light most favorable to sustaining the jury's verdict, we conclude that the evidence was sufficient to support the defendant's conviction.[5]

---

[4] "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." General Statutes § 53a-3 (13).

[5] Relying on *State* v. *Robert H.*, 273 Conn. 56, 866 A.2d 1255 (2004), the defendant also argues that this court, when assessing his sufficiency claim, may not consider evidence pertaining to his possessing and wielding a BB gun. In *Robert H.*, our Supreme Court held that "[i]n order for any appellate

## II

The defendant next claims that the prosecutor committed certain improprieties that deprived him of a fair trial. Specifically, the defendant contends that the prosecutor made several improper remarks during the rebuttal stage of closing arguments and that those improprieties deprived him of his due process right to a fair trial and violated his fifth amendment right to remain silent.[6] We conclude that none of these remarks were improper.[7]

The following additional facts are necessary to resolve this claim. The defendant did not testify at trial. During closing arguments, defense counsel began his summation with the following statement: "This prosecutor did his job but gave you a mess. It's a jungle of

theory to withstand scrutiny . . . it must be shown to be not merely before the jury due to an incidental reference, but as part of a coherent theory of guilt . . . ." (Internal quotation marks omitted.) Id., 83. According to the defendant, evidence regarding his possessing and wielding a BB gun was not focused upon by the state at trial and, therefore, cannot be relied upon to support his conviction of risk of injury to a child. Because we conclude that the defendant's conduct during his physical confrontation with the police was sufficient to support the jury's verdict, we need not address this argument.

[6] The defendant in his brief argues, in passing, that the prosecutor's remarks also implicated his sixth amendment right to confront his accusers, but presents no analysis in support of his assertion. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Creative Masonry & Chimney, LLC* v. *Johnson*, 142 Conn. App. 135, 142, 64 A.3d 359, cert. denied, 309 Conn. 903, 68 A.3d 658 (2013). We therefore decline to address this argument.

[7] Although the defendant did not preserve the impropriety claim at trial, it is well settled that "a defendant who fails to preserve claims of prosecutorial [impropriety] need not seek to prevail under the specific requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test." (Internal quotation marks omitted.) *State* v. *Payne*, 303 Conn. 538, 560, 34 A.3d 370 (2012). Therefore, we will address the merits of the defendant's claim.

liars and felons and a police investigation that relied solely on them. And he wants you to make some kind of sense of it." Defense counsel asked the jury if it "[w]ould . . . rely on liars and felons?"

Defense counsel proceeded to challenge the credibility of the state's witnesses. Beginning with K, he referred to her as a compulsive liar, "careless parent," drug user, and, in conclusion, stated, "[w]e all agree [K] is a liar." Turning to K's friend, defense counsel similarly characterized him as a drug addict and felon who could not be trusted: "He flagged down a cop and told him a story [on the night in question], like he tried to do [while testifying]. A story only his clever and deceitful mind [could conceive] to get the party broken up."

At the outset of his rebuttal, the prosecutor stated: "To hear [defense counsel] tell it, none of us were in the same courtroom. . . . Let's . . . talk about a few things .. . . [E]verybody in this case is lying except good old Alex. The man who transgressed by something that [defense counsel] didn't really specify, but I think we can say [his explanation is] . . . [because he was] alleged to have smoked crack cocaine . . . [he was] paranoid [and that] paranoia is demonstrated by the fact that there are three weapons in the bedroom." The prosecutor then proceeded to rebut propositions raised by defense counsel: "Counsel's suggesting that [K] and [her friend] and the New Haven cops are all liars. It couldn't have taken three or four cops to break the door down when this poor little Alex was holding them back, could it? They're all liars. [K] lied to the doctors; she must be lying to you all." After addressing defense counsel's characterization of K, the prosecutor remarked: "[K] is not on trial here, despite what [defense counsel] would have you believe. She's not the defendant; he's the defendant. He, Alex Holley. Counsel is trying to take your mind and your eyes away

from [K] as a witness and make her the defendant. When, in actuality, his client is the defendant. He's on trial, not [K]."

We first identify the standard of review for claims of prosecutorial impropriety. "[T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial [impropriety]." (Internal quotation marks omitted.) *State* v. *Campbell*, 141 Conn. App. 55, 60, 60 A.3d 967, cert. denied, 308 Conn. 933, 64 A.3d 331 (2013).

When evaluating claims of prosecutorial impropriety, our inquiry is binary. *State* v. *Payne*, 303 Conn. 538, 560, 34 A.3d 370 (2012). First, we determine if an impropriety occurred. Id. Second, if an impropriety did occur, we determine whether it deprived the defendant of his due process right to a fair trial. Id. Thus, our initial task is a fact specific determination as to whether the prosecutor's conduct was improper.

"[A]n impropriety is an impropriety, regardless of its ultimate effect on the fairness of the trial." (Internal quotation marks omitted.) Id., 560–61. "[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate,

a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case." (Internal quotation marks omitted.) *State* v. *Gibson*, 302 Conn. 653, 659, 31 A.3d 346 (2011).

Our Supreme Court has recently held that, with respect to prosecutorial impropriety claims implicating due process generally, "the burden is on the defendant to show . . . that the remarks were improper . . . ." *State* v. *Payne*, supra, 303 Conn. 563. Likewise, with respect to impropriety claims implicating "specifically enumerated constitutional right[s], such as the fifth amendment right to remain silent," the burden of establishing an impropriety remains with the defendant.[8] Id.

## A

The defendant first contends that the prosecutor's remarks referring to the defendant as "good old Alex" and "poor little Alex" were improper because they "urged the jury [to] adopt the state's sarcastic and derisive view of the defendant as a person," thereby depriving him of his due process right to a fair trial. We disagree.[9]

---

[8] Although the defendant claims a violation of both his due process right to a fair trial and his specifically enumerated constitutional right to remain silent under the fifth amendment, he still carries the burden of establishing an impropriety. "[I]f the defendant raises a claim that the prosecutorial improprieties infringed a specifically enumerated constitutional right *and the defendant meets his burden of establishing the constitutional violation,* the burden is then on the state to prove that the impropriety was harmless beyond a reasonable doubt." (Emphasis added.) *State* v. *Payne*, supra, 303 Conn. 563.

[9] The defendant asserts that the prosecutor's remarks analogizing the defendant's situation to that of the symphonic work by Sergei Prokofiev, "Peter and the Wolf," are also improper. The defendant, however, raised this argument for the first time in his reply brief. "[C]laims . . . are unreviewable when raised for the first time in a reply brief." (Internal quotation

It is well settled that "[a] prosecutor may not seek to sway the jury by unfair appeals to emotion and prejudice . . . ." (Internal quotation marks omitted.) *State v. Kendall*, 123 Conn. App. 625, 637, 2 A.3d 990, cert. denied, 299 Conn. 902, 10 A.3d 521 (2010). "[O]ur Supreme Court has recognized that repetitive and excessive use of sarcasm is one method of improperly swaying the fact finder." (Internal quotation marks omitted.) Id., 642. Additionally, "we have recognized that the excessive use of sarcasm may improperly influence a jury. . . . A prosecutor's frequent and gratuitous use of sarcasm can [call on] the jurors' feelings of disdain, and likely sen[d] them the message that the use of sarcasm, rather than reasoned and moral judgment, as a method of argument [is] permissible and appropriate for them to use." Id., 637. "Although we neither encourage nor condone the use of sarcasm, we also recognize that not every use of rhetorical language or device is improper. . . . The occasional use of rhetorical devices is simply fair argument." (Internal quotation marks omitted.) Id., 642.

In concluding that the prosecutor's remarks were not improper, we find the principles set forth in *State v. John M.*, 87 Conn. App. 301, 865 A.2d 450 (2005), aff'd, 285 Conn. 822, 942 A.2d 323 (2008), persuasive. In *John M.*, the prosecutor made two sarcastic remarks during the rebuttal stage of closing argument. Id., 314. These remarks "were made in the course of the prosecutor's marshaling of and commenting on the evidence, as well as in her response to defense counsel's closing argument." Id., 314–15. The court concluded that the prosecutor's "limited use" of sarcasm was not improper. Id., 315.

In the present case, the prosecutor's remarks occurred at the outset of his rebuttal in response to

marks omitted.) *Certo v. Fink*, 140 Conn. App. 740, 747 n.5, 60 A.3d 372 (2013). Accordingly, we decline to address this matter.

defense counsel's criticism of the state's witnesses. Indeed, defense counsel asserted that the entirety of the state's witnesses were lying and alluded to the unlikelihood that the defendant barricaded the door against several police officers. In context, it is evident that the prosecutor was addressing an inference raised by defense counsel that it was not possible for the defendant to barricade the door against four or five police officers. See *State* v. *Singh*, 259 Conn. 693, 717, 793 A.2d 226 (2002) (state may properly respond to inferences raised by defendant's closing argument). As in *John M.*, the two remarks were made by the prosecutor both as he marshaled and commented on the evidence and responded to matters raised by defense counsel in his summation.

Although "[a] prosecutor may not appeal to the emotions, passions and prejudices of the [fact finder] . . . [a] situation such as the one here . . . [where] *the prosecutor used sarcasm only twice in [his] rebuttal argument*, does not constitute such an appeal." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *John M.*, supra, 87 Conn. App. 314. Accordingly, we conclude that the remarks were not improper.

## B

The defendant next contends that two of the prosecutor's remarks were improper because they infringed on and implicated, respectively, the defendant's constitutional right not to testify: (1) "everybody in this case is lying except good old Alex"; and (2) "[c]ounsel is trying to take your mind and your eyes away from [K] as a witness and make her the defendant. When, in actuality, his client is the defendant. He's on trial, not [K]."

"It is well settled that comment by the prosecuting attorney . . . on the defendant's failure to testify is

prohibited by the fifth amendment to the United States constitution." (Internal quotation marks omitted.) *State* v. *Satchwell*, 244 Conn. 547, 570, 710 A.2d 1348 (1998).[10] "In determining whether a prosecutor's comments have encroached upon a defendant's right to remain silent, we ask: Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify? . . . Further, in applying this test, we must look to the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact upon the jury. . . . Finally, [w]e also recognize that the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Citations omitted; internal quotation marks omitted.) *State* v. *Haase*, 243 Conn. 324, 333, 702 A.2d 1187 (1997), cert. denied, 523 U.S. 1111, 118 S. Ct. 1685, 140 L. Ed. 2d 822 (1998).

1

The defendant contends that the first remark, "everybody in this case is lying except good old Alex," raised the defendant's credibility as an issue, thereby violating the defendant's right to rely on the fifth amendment and elect not to testify in his own defense. We disagree.

When viewing the remark in the context of the closing arguments, it is evident that it was prompted by defense counsel's summation and not a manifest intention to refer to the failure of the defendant to testify. Defense counsel, in his summation, repeatedly characterized the state's witnesses as untrustworthy and irresponsible. The remark occurred at the outset of the prosecutor's rebuttal and encapsulated the general theme of defense counsel's summation—that all of the state's witnesses

---

[10] This right is statutorily recognized in General Statutes § 54-84.

were liars. "It is well established that [a] prosecutor may respond to the argument of defense counsel during rebuttal. . . . As this court has observed, our case law consistently has held that invited argument is not improper." (Citation omitted; internal quotation marks omitted.) *State* v. *Lindsay*, 143 Conn. App. 160, 179, 66 A.3d 944 (2013). To the extent that the remark, taken in context, can be understood as a response to defense counsel's characterization of the state's witnesses, we conclude that it does not establish a manifest intention to refer to the defendant's failure to testify.

Likewise, we conclude that the jury would not have naturally and necessarily taken the remark as a comment on the defendant's failure to testify. The defendant argues that the jury "could have reasonably understood" the remark as a reference to his failure to testify. "The test, however, is not whether it would be *reasonable* for the jury to interpret [the remark] as a [reference to] the defendant's failure to testify, but whether the jury would *naturally and necessarily* interpret it as such." (Emphasis in original; internal quotation marks omitted.) *State* v. *Palmer*, 78 Conn. App. 418, 424, 826 A.2d 1253, cert. denied, 266 Conn. 913, 833 A.2d 465 (2003). The jury reasonably could have understood the remark in context as the prosecutor's response to defense counsel's repeated attempts to undermine the credibility of the state's witnesses. Moreover, the court specifically instructed the jury not to draw an adverse inference from the defendant's failure to testify. "[A] court should not lightly infer that . . . a jury, sitting through lengthy exhortation, will draw [a remark's most damaging meaning] from the plethora of less damaging interpretations." (Internal quotation marks omitted.) *State* v. *Williams*, 81 Conn. App. 1, 16–17, 838 A.2d 214, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004). We therefore conclude that the jury would not have naturally and necessarily taken the remark as a comment

on the failure of the defendant to testify. Accordingly, we conclude that the remark was not improper.

## 2

The defendant contends that the second remark, "[c]ounsel is trying to take your mind and your eyes away from [K] as a witness and make her the defendant. When, in actuality, his client is the defendant. He's on trial, not [K]," was improper because it referenced the defendant's failure to offer evidence, thereby implicating his constitutional right not to testify. We are not persuaded.

We do not perceive this remark as referring to the defendant's failure to offer evidence. The record demonstrates that the prevalent theme of defense counsel's summation was K's character. Defense counsel referred to K as the "foundation" of the state's case and repeatedly characterized her as a liar, unreliable, and careless. It was only after rebutting each of defense counsel's characterizations of K that the prosecutor made the remark at issue. Thereafter, the prosecutor proceeded to discuss the evidence adduced at trial. The remark neither specifically referred to the defendant's failure to offer evidence, nor does the context suggest such an implication. Rather, the record demonstrates that the remark was in response to defense counsel's attempt to frame K's character as the central issue in the case and sought to refocus the jury's attention on the proper task of evaluating the evidence presented at trial. See *State v. Lindsay*, supra, 143 Conn. App. 179 (invited argument not improper). For the foregoing reasons, we conclude that the prosecutor's remarks were not improper.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

[11] Because we have concluded that the prosecutor's remarks were not improper, we need not conduct a due process analysis pursuant to *State* v. *Williams*, 204 Conn. 523, 529 A.2d 653 (1987).