******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JAMES E.*
(SC 19711)

Rogers, C. J., and Palmer, McDonald, Robinson, D'Auria and Espinosa, Js.

*Syllabus*

Convicted of, inter alia, the crime of risk of injury to a child in connection with an incident during which the defendant's three year old child was present when he shot his cousin, D, the defendant appealed to the Appellate Court, which affirmed the trial court's judgment. D was remodeling the defendant's kitchen floor when the defendant told D that he had to stop working so that the defendant could feed his child. The defendant and D argued while the child remained in close proximity, and, after the argument ended, the defendant retrieved a gun from an adjacent cabinet. He turned the gun past the child in order to face D and then engaged in a struggle with D for the gun, during which D was shot. The risk of injury count in the information and the defendant's conviction on that count was based on his endangerment of the child's life or limb. The Appellate Court affirmed the conviction on the basis of an uncharged theory of liability, namely, that the defendant had created a risk of harm to the mental health of the child. On the granting of certification, the defendant appealed to this court, and both the defendant and the state agreed on appeal that the Appellate Court had incorrectly upheld the conviction on the basis of the uncharged theory of liability. The state claimed, as an alternative ground for affirmance, that there was sufficient evidence to prove that the defendant had wilfully caused his child to be placed in a situation in which her life or limb was endangered. *Held* that the state presented sufficient evidence from which the jury reasonably could have concluded that the defendant was guilty beyond a reasonably doubt of risk of injury to a child on the basis of the state's alternative ground for affirmance: the jury reasonably could have found that the defendant, in using the gun as he did, created a situation that endangered the life or limb of his child, as the child was in close proximity to the struggle for and sudden firing of the gun, and the child was effectively placed in the line of fire when defendant turned the gun from the cabinet to face D; furthermore, the defendant had the requisite general intent to commit the crime of risk of injury to a child, as he intentionally took the gun from the cabinet, thereby escalating the argument with D, with knowledge that the child was in close proximity to his dangerous actions, which evidenced a reckless disregard for the consequences of those actions.

Argued September 21—officially released December 12, 2017

*Procedural History*

Substitute information charging the defendant with two counts of the crime of assault of an elderly person in the first degree and one count each of the crimes of reckless endangerment in the first degree and risk of injury to a child, brought to the Superior Court in the judicial district of New Haven and tried to the jury before *B. Fischer, J.*; verdict and judgment of guilty, from which the defendant appealed to the Appellate Court, *DiPentima, C. J.*, and *Keller* and *Sullivan, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Timothy H. Everett*, assigned counsel, with whom were *Kevin Semataska*, certified legal intern, and, on the brief, *Dennis Mautner*, certified legal intern, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *John Waddock*, former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ROGERS, C. J. The primary issue that we must resolve in this certified appeal is whether the state presented sufficient evidence from which the jury reasonably could have concluded that the defendant, James E., was guilty of risk of injury to a child in violation of General Statutes § 53-21 (a) (1),[1] when he retrieved and discharged a firearm during a chaotic altercation with another man in the vicinity of his three year old child. The defendant appealed from the judgment rendered in accordance with the jury's guilty verdict to the Appellate Court, which affirmed the judgment of the trial court because, inter alia, there was sufficient evidence to support his conviction of risk of injury to a child based on an uncharged mental health theory of liability.[2] See *State* v. *James E.*, 154 Conn. App. 795, 798, 112 A.3d 791 (2015). We granted the defendant's petition for certification to appeal,[3] and, on appeal, the state presented an alternative ground for affirmance: "There was sufficient evidence to prove [that] the defendant [was] guilty of risk of injury to a [child] because the defendant wilfully or unlawfully caused or permitted a three year old child to be placed in such a situation that the life or limb of that child was endangered."[4] The defendant opposes this alternative ground, claiming that the state also lacked sufficient evidence to support his conviction under that theory. We agree with the state on the alternative ground presented and, therefore, affirm the judgment of the Appellate Court.[5]

The jury reasonably could have found the following facts. The defendant and his three year old child lived in an apartment rented from Douglas E., his cousin. On the morning in question, the child was watching television in the living room when the defendant allowed Douglas E. and three others into the adjacent kitchen through the back door to continue remodeling work on the kitchen floor. An open doorway provided a clear sight line between the living room and the kitchen.

Around noon, the defendant brought the child into the small kitchen and told Douglas E., seated at the kitchen table, that everyone had to leave so he could feed the child. Douglas E. objected, and the two argued. During the argument, the child was standing next to the defendant and near the doorway between the living room and the kitchen, either inside the kitchen or within "a couple of feet" of it.

After the argument ended, the defendant suddenly approached and opened a kitchen cabinet by the living room doorway. The defendant extracted a gun from the cabinet and, according to the testimony of one eyewitness, turned in the direction of the refrigerator as he moved to face Douglas E., who was further inside the kitchen. Because the refrigerator was located on one end of the living room doorway and the cabinet

from which the gun was retrieved was located on the other end, the direction of the defendant's movement toward the refrigerator caused him to turn across the living room doorway, where the child was standing.

Upon seeing the gun, even before it had "cleared the cabinet," Douglas E. "lunged" at the defendant, and they "scuffle[d]," "scrapping for [the gun]." The defendant testified that Douglas E. "was yanking and pulling and pushing it back towards [him] trying to yank it out of [the defendant's] hand . . . ." During the struggle, shots were fired, and Douglas E. ended up lying on the kitchen floor. Douglas E. testified that he did not recall hearing any shots during the quick, frantic altercation and realized he was shot only after he had exited the house.

After the gunshots, the child was crying, "[s]tanding up in the living room" and close to the edge of the kitchen floor tiles, while Douglas E. was on the kitchen floor with the defendant standing over him holding the gun to his head. As the defendant threatened to shoot Douglas E. in the head, the child "was yelling, daddy, don't shoot that gun; daddy, don't shoot that gun." The child then "[ran] to [the defendant], grabbed his leg, and he picked up the [child] . . . and walked to the front door," ending the encounter.

The defendant was charged by way of a long form information with risk of injury to a child for endangering his child's "life or limb" pursuant to § 53-21 (a) (1), along with other charges not at issue on appeal.[6] He was found guilty by a jury and subsequently sentenced. On appeal, the Appellate Court upheld the jury's guilty verdict on the ground that it was supported by sufficient evidence that the defendant had created "a risk of harm to the mental health of the child," a separate theory of liability under § 53-21 (a) (1). *State* v. *James E.*, supra, 154 Conn. App. 812. This appeal followed.

Both parties agree that the Appellate Court incorrectly affirmed the defendant's conviction on the basis of an uncharged theory of liability, namely, risk of harm to the mental health of the child. See footnote 2 of this opinion. We agree. See *State* v. *Padua*, 273 Conn. 138, 148–49, 869 A.2d 192 (2005) (state required to prove that defendant committed offense in manner described in information; under § 53-21 [a] [1], situation likely to injure child distinct from endangerment of child's life or limb). We therefore proceed to address the state's alternative ground for affirmance and the defendant's claim that the state failed to present sufficient evidence for the jury to conclude beyond a reasonable doubt that he "wilfully or unlawfully caused or permitted [his] child to be placed in such a situation that [her] life or limb . . . was endangered," pursuant to § 53-21 (a) (1). Specifically, the defendant alleges that the "evidence did not establish that the child was in the room when the shooting occurred, did not establish that the child

was in the line of fire of one of the shots, and did not provide the jury with a basis upon which to conclude that one of the bullets fired could have ricocheted so as to endanger the child's life or limb." Accordingly, the defendant alleges there was insufficient evidence to establish that the child's life was endangered and that he acted with reckless disregard of this situation.

When a criminal conviction is reviewed for the sufficiency of the evidence, we apply a well established two-part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"[I]t does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Na'im B.*, 288 Conn. 290, 296, 952 A.2d 755 (2008) "[I]ntent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Niemeyer*, 258 Conn. 510, 518, 782 A.2d 658 (2001). "In evaluating evidence, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . [Instead, the jury] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . It is axiomatic . . . that [a]ny [inference] drawn must be rational and founded upon the evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Na'im B.*, supra, 296–97.

Section 53-21 (a) (1) provides in relevant part: "Any person who . . . wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of . . . a class C felony . . . ." In construing that statute, "we long have recognized that subdivision (1) of § 53-21 [(a)] prohibits two different types of behavior: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the [child's] moral or physical welfare . . . and (2) acts directly perpetrated on the person of the [child] and injurious to his [or her] moral or physical well-being. . . . Thus, the first part of § 53-21 [(a) (1)] prohibits the creation of *situations* detrimental to a child's welfare, while the second part proscribes injuri-

ous *acts* directly perpetrated on the child." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Gewily*, 280 Conn. 660, 668, 911 A.2d 293 (2006). We are concerned in this case with the situation part of § 53-21 (a) (1).

We have concluded that the situation part may be supported by any of three alternative theories of potential liability, namely, endangerment to life or limb, likely injury to health, or likely impairment to morals. See *State* v. *Payne*, 240 Conn. 766, 772, 695 A.2d 525 (1997) (noting that "the phrase 'life or limb is endangered' indicates the intent of the legislature to protect children from conduct creating a risk of physical injury, and . . . the phrase 'morals likely to be impaired' expresses the legislature's intent to prohibit conduct threatening the morality of children, [and it follows, therefore, that] the phrase 'health is likely to be injured' must include the risk of injury to the mental health of a child"), overruled in part on other grounds by *State* v. *Romero*, 269 Conn. 481, 490, 849 A.2d 760 (2004).

This court previously has recognized that, "[u]nder the 'situation' [part] of § 53-21 [(a) (1)], the state need not prove actual injury to the child. Instead, it must prove that the defendant wilfully created a situation that posed a risk to the child's [life, limb] health or morals. . . . The situation [part] of § 53-21 [(a) (1)] encompasses the protection of the body as well as the safety and security of the environment in which the child exists, and for which the adult is responsible." (Internal quotation marks omitted.) *State* v. *Scruggs*, 279 Conn. 698, 713, 905 A.2d 24 (2006). "The plain language of the first part of § 53-21 indicates the legislature's understanding that there is a broad class of intentional conduct that can put a child's well-being seriously at risk without any physical contact by the perpetrator." *State* v. *Payne*, supra, 240 Conn. 774.

The principle that no actual injury needs to be proved is applicable to the "life or limb" theory of liability under § 53-21 (a) (1). See *State* v. *Holley*, 144 Conn. App. 558, 564, 72 A.3d 1279 (engaging in "physical altercation" with five police officers in small room containing sleeping child enabled jury to infer that defendant "creat[ed] a situation likely to endanger that child's life or limb," even when no actual injury is evidenced), cert. denied, 310 Conn. 946, 80 A.3d 907 (2013); *State* v. *VanAllen*, 140 Conn. App. 689, 692–94, 59 A.3d 888 (evidence enabled jury to find that defendant "created a situation that endangered the life and limb of his [child]" by pointing loaded gun at mother's head while she sat in driver's seat of car with her child in rear passenger seat before pointing gun up and firing shots into air several times), cert. denied, 308 Conn. 921, 62 A.3d 1134 (2013); *State* v. *Davila*, 75 Conn. App. 432, 437–38, 816 A.2d 673 (jury reasonably could have concluded that defendant created situation that endan-

gered life or limb of children, who were not physically injured, when defendant fired pistol into apartment where children were present and bullet fragments were found near where children were at time of shooting), cert. denied, 264 Conn. 909, 826 A.2d 180 (2003), cert. denied, 543 U.S. 897, 125 S. Ct. 92, 160 L. Ed. 2d 166 (2004).

The defendant in the present case claims that there was insufficient evidence to support the jury's verdict of guilty because the state failed to establish beyond a reasonable doubt that the "child was in a place of danger at the time that the defendant discharged his gun, i.e., shot his cousin." He further contends that, "[i]f [the child] was not [in a place of danger] . . . the defendant was not proven to have acted in reckless disregard of danger to her life or limb." We conclude that, viewing the evidence in the light most favorable to sustaining the verdict, the jury's guilty verdict was supported by direct and circumstantial evidence establishing the defendant's guilt beyond a reasonable doubt of risk of injury to a child pursuant to § 53-21 (a) (1).

First, we disagree that there was insufficient evidence to support a finding that the child was placed in danger. Although no eyewitness testified as to the child's exact location during the fight, there was testimony that she was located within a few feet of the living room doorway immediately before and after the defendant removed the gun from the cabinet and engaged in a physical fight with Douglas E. over the gun. It would be reasonable and logical for the jury to have found that the child did not move during this quick, chaotic altercation, thus supporting the conclusion that the child was in close proximity to the kitchen. Further, testimony supported the fact that the defendant swung his gun from the cabinet, across the living room doorway where his child was standing, to face Douglas E., which is an act that would effectively have placed the child in the line of fire at that time. Also, according to both the defendant and Douglas E., during the physical fight, the gun was yanked about and shots were fired suddenly. Thus, it would be equally reasonable and logical for the jury to have found beyond a reasonable doubt that the child's life or limb was endangered by the defendant's use of the gun, particularly in light of the chaotic, hand-to-hand struggle that immediately ensued and the sudden firing of the gun.[7] In his testimony, even the defendant expressed confusion over how the shots were actually fired, stating: "I don't recall me pulling the trigger," and "[a]ll I know is the gun fired." We conclude, on the basis of this testimony and the reasonable inferences that the defendant did not use and control the gun responsibly, that the jury reasonably could have found beyond a reasonable doubt that the defendant created a situation that endangered the life or limb of his child in violation of § 53-21 (a) (1).[8]

In addition to proving that the defendant created a dangerous situation, regardless of actual injury, § 53-21 (a) (1) also requires the state to prove that the defendant "*wilfully* or *unlawfully* [created that situation] . . . . Conduct is wilful when 'done purposefully and with knowledge of [its] likely consequences.' " (Footnote omitted.) *State* v. *Na'im B.*, supra, 288 Conn. 297. Because risk of injury to a child is a general intent crime, proof of "[s]pecific intent is not a necessary requirement . . . . Rather, the intent to do some act coupled with a reckless disregard of the consequences . . . of that act is sufficient to [establish] a violation of the statute." (Internal quotation marks omitted.) *State* v. *Sorabella*, 277 Conn. 155, 172–73, 891 A.2d 897, cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006); see also *State* v. *Patterson*, 308 Conn. 835, 842–43, 68 A.3d 83 (2013) (defendant's conviction of risk of injury to child where two year old died of dehydration was supported by record because, even if harm was not defendant's intention, she "must have been aware of and consciously disregarded a substantial and unjustifiable risk that withholding liquids could cause the victim harm" [internal quotation marks omitted]). As a general intent crime, it is unnecessary for "the [defendant to] be aware that his conduct is likely to impact a child [under age sixteen]." (Internal quotation marks omitted.) *State* v. *Sorabella*, supra, 173.

Applying these principles to the present case, we conclude that the state was not required to demonstrate that the defendant intended to put his child at risk, but only that he wilfully committed an act with a reckless disregard for its consequences. We conclude that the defendant's intentional act of taking the gun from the cabinet, thereby escalating the argument with Douglas E. after the verbal argument had ended, with the knowledge that the child was in close proximity to his dangerous actions, evidenced a reckless disregard for the consequences of his actions sufficient to constitute the requisite general intent. See, e.g., *State* v. *VanDeusen*, 160 Conn. App. 815, 836–37, 126 A.3d 604 (affirming conviction because "evidence was . . . sufficient for the jury reasonably to find that the defendant's conduct constituted a reckless disregard of the consequences of her actions" and, therefore, was sufficient "to convict the defendant of risk of injury to a child" when, with knowledge that accomplice had handgun and intended violence, defendant attempted to induce residents to exit house before accomplice fired into house where child was present), cert. denied, 320 Conn. 903, 127 A.3d 187 (2015); *State* v. *Holley*, supra, 144 Conn. App. 564 (finding that defendant's conduct "demonstrated a reckless disregard of the consequences" and, thus, allowed jury reasonably to infer that he "create[d] a situation likely to endanger [the] child's life or limb," given jury's "common knowledge and experience" and evidence that defendant knew child was asleep on bed

in room where he prevented police officers' entry, and he subsequently "refused to comply with verbal commands" but, rather, "engaged five officers in a violent struggle in close proximity to [the child]" [internal quotation marks omitted]).

Because the defendant in the present case created a situation that endangered the life or limb of his child and he had the requisite general intent, we conclude that the state presented sufficient evidence from which the jury reasonably could have concluded that the defendant was guilty beyond a reasonable doubt of risk of injury to a child. Accordingly, we affirm the judgment of the Appellate Court on this alternative ground.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of . . . a class C felony . . . ."

[2] The long form information charged the defendant with, inter alia, risk of injury to a child on the ground that he "did wilfully or unlawfully cause or permit a child under the age of sixteen years to be placed in such a situation that [her] life or limb was endangered, said conduct being in violation of section 53-21 (a) (1) . . . ." The Appellate Court upheld that conviction, but on the uncharged theory that "[t]he jury was free to determine that the defendant's shooting and threatening of the victim in the presence of the child created a risk of harm to the *mental health* of the child." (Emphasis added.) *State* v. *James E.*, 154 Conn. App. 795, 812, 112 A.3d 791 (2015).

[3] Our grant of the defendant's petition for certification to appeal was limited to the following issue: "Did the Appellate Court properly determine that evidence was sufficient to prove the state's allegation that the defendant had caused or permitted a child 'to be placed in such a situation that [her] life or limb was endangered' when the Appellate Court determined that there was sufficient evidence to support an uncharged theory of risk of injury to a child, i.e., that 'the defendant's conduct created a risk of harm to the mental health of the child?' " *State* v. *James E.*, 321 Conn. 921, 138 A.3d 282 (2016). On appeal, the defendant and the state agree that the Appellate Court improperly relied upon an uncharged mental health theory of liability in its conclusion that there was sufficient evidence to support the defendant's criminal conviction of risk of injury to a child. See footnote 2 of this opinion.

[4] Pursuant to Practice Book § 84-11 (a), the state, as appellee, "may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the [A]ppellate [C]ourt." The state submitted this alternative ground under the charged "life or limb" theory of liability, which was raised and briefed in the Appellate Court.

[5] We note that the only issue certified on appeal is with regard to the defendant's conviction of risk of injury to a child pursuant to § 53-21 (a) (1), and, as such, we do not review the other issues addressed by the Appellate Court.

[6] The defendant was also charged with and convicted of two counts of assault of an elderly person in violation of General Statutes § 52a-59a (a) (1) and one count of reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a). The Appellate Court affirmed his conviction as to those counts.

[7] The state alleges that the child was in danger from bullet ricochets. We do not need to evaluate this claim because we conclude that the eyewitness

testimony and the inferences reasonably drawn therefrom sufficiently establish that the location of the child was in close proximity to the gun and the fight over said gun, endangering her life or limb.

[8] In support of his argument that the state failed to prove the "life or limb" theory in the present case, the defendant asserts that the facts in *State* v. *VanAllen*, supra, 140 Conn. App. 689, and *State* v. *Davila*, supra, 75 Conn. App. 432, are distinguishable from the present facts because, in those cases, "the evidence of danger to the life or limb stemmed from the location of a child (or children) in the line of fire of a gun aimed by the defendant." In contrast, the defendant argues, "the evidence [in the present case] did not place [his child] in the line of fire  . . . ." We disagree. In both *VanAllen* and *Davila*, contrary to the defendant's assertions, no direct evidence was presented to indicate that the gun was pointed at the child or children in question. See *State* v. *VanAllen*, supra, 694 (without analyzing possible bullet trajectories, Appellate Court concluded that jury reasonably could have found that pointing gun into car where child was seated created situation endangering life or limb of child); *State* v. *Davila*, supra, 437–38 (Appellate Court determined that jury reasonably could have concluded that defendant created situation endangering life or limb of children despite lack of evidence specifying how close to actual trajectory of bullets fired into home children were at time of shooting). In support his "line of fire" analysis, the defendant also relies on *Commonwealth* v. *Brown*, 605 Pa. 103, 115–16, 987 A.2d 699 (2009), cert. denied, 562 U.S. 844, 131 S. Ct. 76, 178 L. Ed. 2d 52 (2010), which applies a "zone of danger" test to evaluate the sufficiency of the evidence to prove there was a "grave risk of death" to a bystander as an aggravating factor during sentencing for a murder conviction, and *Hall* v. *Commonwealth*, 468 S.W.3d 814, 829 (Ky. 2012), which referenced case law in that jurisdiction stating that evidence is insufficient to support a conviction for wanton endangerment when no evidence demonstrated that a bullet was fired in the direction of the person supposedly endangered. We note that this court has not previously used a zone of danger analysis to interpret the risk of injury to a child statute, and we decline to do so today. Moreover, we agree with the Appellate Court's reasoning in *State* v. *Holley*, supra, 144 Conn. App. 564, which makes it clear that evidence of proximity to a physical altercation in close quarters, in and of itself, is sufficient to establish danger to the life or limb of a child.

———————————————